**In re GATLINBURG MOTEL ENTERPRISES, LTD., Debtor.**

**John P. NEWTON, Jr., Trustee, Plaintiff,**

**v.**

**Marvin J. HERSKOWITZ, Trustee, Sevier County Bank, First American National Bank, First National Bank of Oneida, Marvin J. Herskowitz, Jennie L. Thomas, William G. Parker, Paul Wartzman, Shara P. Moss Stock, Pauline Parker, Marlin Graber, Stanley Wender, Estate of Louis Graber, Joseph L. Parker, Michael A. Parker, Al H. Thomas, and Flora B. Goldsmith, Defendants.**

**Bankruptcy No. 3–87–00708.**
**Adv. No. 3–89–0032.**

United States Bankruptcy Court, E.D. Tennessee.

Sept. 12, 1990.

Gentry, Tipton, Kizer & Little, P.C., W. Morris Kizer, Knoxville, Tenn., for plaintiff.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for defendants Marvin J. Herskowitz, Trustee, Marvin J. Herskowitz, William G. Parker, Paul Wartzman, Pauline S. Parker, Stanley Wender, Marlin Graber, Joseph L. Parker, Michael A. Parker, Jennie L. Thomas and Shara P. Moss Stock.

John H. Fowler, Sevierville, Tenn., for defendant, Sevier County Bank.

Bass, Berry & Sims, L. Wearen Hughes, Nashville, Tenn., for defendant, First American Nat. Bank.

Baker, Worthington, Crossley, Stansberry & Woolf, James A. McIntosh, Daniel J. Moore, Knoxville, Tenn., for defendant, First Nat. Bank of Oneida.

## MEMORANDUM

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The court has before it a complaint filed by John P. Newton, Jr., Trustee, against multiple defendants.[1] Counterclaims and cross-claims are asserted by the defendants, First American National Bank (First American) and First National Bank of Oneida (First National), against the plaintiff and defendant, Marvin J. Herskowitz, Trustee (Herskowitz).[2] Additionally, on June 1, 1989, the court consolidated for trial with this adversary proceeding a motion filed in the debtor's case by the plaintiff on April 21, 1989, seeking an order vacating an "Order For Adequate Protection" entered July 15, 1988. By this motion, the plaintiff also requests that Herskowitz be required to repay the estate the sum of $202,883.40 received from the debtor pursuant to the "Order For Adequate Protection."

A Pretrial Order defining the plaintiff's theories of recovery and the various defenses relied upon by the defendants was entered February 15, 1990. All parties are properly before the court, although defendants Al H. Thomas and Flora B. Goldsmith have not filed responsive pleadings.[3] A trial was held August 16, 1990, on designated issues.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (K), and (O) (West Supp. 1990).

### I

The court is called upon to resolve the following issues:

1. The effect and validity of a "Leasehold Deed Of Trust" (the Herskowitz Deed) executed by the debtor on May 10, 1983, and registered in the office of the Register of Deeds for Sevier County, Tennessee.[4] The plaintiff contends he is entitled to avoid the lien of the Herskowitz Deed under the "strong arm clause" of 11 U.S.C.A. § 544(a) (West Supp.1990), and that the lien is automatically preserved for the benefit of the estate pursuant to Code § 551.[5] The defendants, Sevier County Bank, First American, and First National, contend that the Herskowitz Deed is violative of the Statute of Frauds; that parol evidence is inadmissible to alter the terms of the Herskowitz Deed; that, alternatively, the Herskowitz Deed does not secure an existing debt of the debtor; that the Herskowitz Deed is, for the above reasons, void or unenforceable; and that a deed of trust executed by the debtor in favor of the defendant, Sevier County Bank, is superior to the Herskowitz Deed.

---

1. As originally filed on February 10, 1989, the complaint named Marvin J. Herskowitz, Trustee, Sevier County Bank, First American National Bank, and First National Bank of Oneida, as defendants. On September 11, 1989, the plaintiff added eleven individual defendants by filing an "Amendment To Complaint." Al H. Thomas and Flora B. Goldsmith were added as parties defendant pursuant to an order entered October 24, 1989.

2. Marvin J. Herskowitz is a party defendant both in a fiduciary capacity and individually. Unless otherwise stated, references to "Herskowitz" in this Memorandum will be to Marvin J. Herskowitz, Trustee.

3. Al H. Thomas is a debtor in a bankruptcy case pending in the United States Bankruptcy Court for the Western District of Tennessee. On November 1, 1989, the plaintiff obtained an order

modifying the automatic stay to permit him to proceed to judgment in this adversary proceeding.

4. The Herskowitz Deed (Trial Exhibit 4) was executed by the debtor in favor of "Al H. Thomas ("Trustee") and Al H. Thomas, Et Al. ("Beneficiary")." The parties do not dispute that at all times material to this litigation Herskowitz had succeeded to the interest of Al H. Thomas, Trustee, both under the Herskowitz Deed and the promissory note secured by the Herskowitz Deed. See discussion of Kellum Creek Note *infra*.

5. Section 551 provides in material part:
   Any transfer avoided under section ... 544 ... of this title ... is preserved for the benefit of the estate but only with respect to property of the estate.
   11 U.S.C.A. § 551 (West 1979).

2. Whether the plaintiff is entitled to an order vacating an "Order For Adequate Protection" entered in the debtor's case on July 15, 1988, which required the debtor to make "adequate protection payments" to Herskowitz in the amount of $33,813.90 per month.

3. Whether the plaintiff is entitled to avoid transfers from the debtor to Herskowitz made pursuant to the July 15, 1988 "Order For Adequate Protection" totalling $202,883.40.

4. The amount the plaintiff is entitled to recover from Herskowitz and/or the thirteen individual defendants in the event he is successful in avoiding the postpetition transfers from the debtor to Herskowitz.

Prior to trial, the plaintiff dismissed, without prejudice, claims asserted against the individual defendants under 11 U.S.C.A. §§ 502(b), 542, 544(b), and 548 (West 1979 & Supp.1990). Additionally, a claim asserted by the plaintiff against Herskowitz and the thirteen individual defendants under 11 U.S.C.A. § 547 (West 1979 & Supp.1990) has been bifurcated for trial at a future date.

## II

The debtor, Gatlinburg Motel Enterprises, Ltd., a Tennessee limited partnership, owned and operated the Glenstone Lodge, a motel located in Sevier County, Tennessee, in the resort city of Gatlinburg. At all times material to these proceedings, the debtor's exclusive interest in real property consisted of its interest in the leasehold estate upon which it operated the Glenstone Lodge.

The debtor filed a petition under Chapter 11 on March 23, 1987. On January 12, 1989, the Chapter 11 case was converted to a case under Chapter 7. The plaintiff,

John P. Newton, Jr., was thereafter appointed trustee.

Throughout the pendency of the Chapter 11 case, the debtor and defendants, Herskowitz, Sevier County Bank, First American, and First National, proceeded under the premise that the debtor's leasehold estate was encumbered by three deeds of trust: a first deed of trust dated August 30, 1977, in favor of First Federal Savings and Loan Association of Sevierville, Tennessee (First Federal), securing a loan in the original principal amount of $2,600,-000;[6] the Herskowitz Deed dated May 10, 1983, securing a loan in the original principal amount of $3,450,000; and a third deed of trust dated March 7, 1986, in favor of the defendant, Sevier County Bank, securing a loan in the original principal amount of $3,500,000.[7]

On June 14, 1988, during the pendency of the Chapter 11 case, Herskowitz filed a motion for adequate protection (Trial Exhibit 7). On July 13, 1988, immediately prior to a hearing on Herskowitz's motion, the debtor and Herskowitz announced in open court that the motion had been resolved by agreement. Pursuant to that agreement, an "Order For Adequate Protection" was entered July 15, 1988, which provided for the debtor to make monthly "adequate protection payments" to Herskowitz in the amount of $33,813.90 (Trial Exhibit 8).[8] The debtor made six payments totalling $202,883.40 pursuant to the July 15, 1988 "Order For Adequate Protection."

On December 28, 1988, an order was entered dismissing the debtor's Chapter 11 case. On December 30, 1988, Herskowitz filed a "Post–Dismissal Report" suggesting the existence of a potential defect in the Herskowitz Deed. Also, on December

---

6. Prior to the filing of the debtor's petition, Home Federal Savings and Loan Association of Sevierville succeeded to First Federal's interest in the first deed of trust. Subsequent to bankruptcy, the defendant, Sevier County Bank, succeeded to Home Federal's interest.

7. The defendants, First American and First National, or their predecessors, are participants in the loan secured by the Sevier County Bank third deed of trust.

8. On March 10, 1989, Herskowitz filed a motion for summary judgment premised upon his contention that the July 15, 1988 "Order For Adequate Protection" was entitled to res judicata or collateral estoppel effect on the issue of the validity of the Herskowitz Deed. On May 19, 1989, the court entered an order denying Herskowitz's motion. *Newton v. Herskowitz (In re Gatlinburg Motel Enterprises, Ltd.),* 106 B.R. 492 (Bankr.E.D.Tenn.1989).

30, 1988, the debtor filed a "Combined Motion To Alter Or Amend Judgment And Motion To Convert The Case To A Chapter 7 Case." On January 12, 1989, the court entered an order, accompanied by a Memorandum, amending the December 28, 1988 dismissal order to provide for conversion of the debtor's Chapter 11 case to Chapter 7.

On March 7, 1990, an order was entered in the debtor's case granting the defendant, Sevier County Bank, relief from the automatic stay to foreclose the first deed of trust encumbering the debtor's leasehold estate.[9] On April 10, 1990, Sevier County Bank filed a "Report On Sale" stating that it received $3,405,000 from the foreclosure sale, and that after satisfaction of its first deed of trust note and expenses of sale, the sum of $102,780.62 had been delivered to the plaintiff. It is this sum in which the plaintiff, Herskowitz, and three defendant banks assert competing interests.

The court will address the issues before it independently, considering first those issues involving the Herskowitz Deed, and second those issues involving the July 15, 1988 "Order For Adequate Protection."

## III

## THE HERSKOWITZ DEED

Prior to April 21, 1983, the defendants, Al H. Thomas, Marvin J. Herskowitz, individually, and certain of the other named individual defendants owned a collective seventy-five (75%) percent partnership interest in Gatlinburg Motel Enterprises, Ltd., the debtor. On April 21, 1983, Al H. Thomas, individually, and as agent for Marvin J. Herskowitz, individually, and the other named individual defendants, entered into a contract to sell Kellum Creek Ranch, Inc. (Kellum Creek), a corporation, their partnership interests.[10] R.B. Hailey was the president of Kellum Creek, a family-owned corporation. Mr. Hailey was also a

twenty-five (25%) percent general partner in the debtor.

The sale of the partnership interests took place on May 10, 1983. Kellum Creek paid the sum of $4,575,000 to acquire the seventy-five (75%) percent partnership interests owned by the respective individual defendants. Of this sum, $1,125,000 was paid at closing, with the balance of $3,450,000 evidenced by a Note (the Kellum Creek Note) executed by Kellum Creek in favor of the defendant, Al H. Thomas, as Trustee for the defendants, Marvin J. Herskowitz, individually, Joseph Parker, William S. Parker, Shara Stock, Stanley Wender, Marlin Graber, Louis Graber, and Jennie Lee Thomas (Trial Exhibit 14).[11]

To secure payment of the Kellum Creek Note, the debtor, by its general partner, R.B. Hailey, executed the Herskowitz Deed. The Herskowitz Deed, executed May 10, 1983, contains the following material recital:

> [T]he Grantor, for good and valuable considerations, the receipt and legal sufficiency of which are hereby acknowledged, does hereby bargain, sell, convey, confirm, assign, transfer and set over unto the Trustee and his successors and assigns forever, in trust for the benefit of the Beneficiary, that certain described leasehold interest in real property and leasehold improvements and other leasehold rights, title and interest (the "Lease") as is more fully described in Exhibit "A" attached hereto and made a part hereof, "collectively called the 'Mortgaged Property.'"

The Herskowitz Deed was registered in the office of the Register of Deeds for Sevier County, Tennessee, on May 10, 1983, in Trust Book 241, p. 803. Exhibit "A" is not attached to the recorded Herskowitz Deed.

---

**9.** *See supra* note 6.

**10.** The contract (Trial Exhibit 13) evidences the "Seller" as Al H. Thomas, individually, and as agent for the defendants Marvin J. Herskowitz, Joseph Parker, William S. Parker, Shara Stock, Stanley Wender, Marlin Graber, Louis Graber, and Jennie L. Thomas.

**11.** The defendants Paul Wartzman, Pauline Parker, and Michael A. Parker, by their answers to the complaint, admit that they are also beneficiaries of the Kellum Creek Note. The proof does not establish that the defendants Al H. Thomas and Flora Goldsmith are beneficiaries.

On December 28, 1988, the Herskowitz Deed was re-registered in the Sevier County Register's Office in Trust Book 354, p. 536 (Trial Exhibit 9). Appended to the re-registered Herskowitz Deed is an Exhibit "A" which contains a description of the debtor's leasehold estate.[12] Also exhibited to the reregistered Herskowitz Deed is an affidavit of R.B. Hailey which contains the following material statements:[13]

4. At the time I executed the ... [Herskowitz Deed] there was attached thereto as the nineteenth page thereof an exhibit entitled "Exhibit A" in the same form as the nineteenth page now attached to the ... [Herskowitz Deed][14] (which exhibit immediately precedes this affidavit).

5. The aforesaid Exhibit A was inadvertently detached from the ... [Herskowitz Deed] prior to its registration on May 10, 1983....

Mr. Hailey, in addition to being a general partner of the debtor, has been a practicing attorney since 1949. It was his firm, Hailey, Waters, Sykes & Sharp, which prepared the Herskowitz Deed. On the question of Exhibit "A" as referred to in the Herskowitz Deed registered May 10, 1983, Mr. Hailey testified in material part:

DIRECT EXAMINATION BY MR. KIZER:

Q. Now, Mr. Hailey, the Kellum Creek Note that was just introduced, marked as Exhibit 14, was it secured by any type of security?

A. Yes, sir.

Q. What type of security secured Exhibit 14, the promissory note?

A. A second mortgage on the Glenstone Motel property leasehold on Airport Road in Gatlinburg, Tennessee.

. . . .

Q. Did you execute that deed of trust on behalf of Gatlinburg Motel Enterprises, Ltd.?

A. Yes, sir.

Q. On May the 10th, 1983?

A. Yes, sir.

Q. Where did the execution of that document take place?

A. In my law office on Commerce Street in Sevierville, Tennessee.

Q. At the time you executed it, was an Exhibit A, property description of the Glenstone Lodge property, attached in some shape, form, or fashion to the deed of trust?

A. To the best of my recollection as refreshed it was.

. . . .

Q. Mr. Hailey, what was the Exhibit A?

A. The description of the Glenstone Lodge property in the Eleventh Civil District in Sevier County, Gatlinburg on Airport Road.

Q. Are you familiar with the description of that property?

A. Yes, sir.

. . . .

Q. Mr. Hailey, at the end of Exhibit 9 is your affidavit; is that correct?

A. Yes, sir.

---

**12.** Herskowitz does not contend that reregistration of the Herskowitz Deed validates the Herskowitz Deed as originally recorded. *McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995, 1008 (M.D.Tenn.1983) ("[R]eregistration [of a deed] is only effective as of the date filed and cannot relate back to defeat the rights of an intervening party such as the trustee." (citations omitted)). Further, reregistration of the Herskowitz Deed on December 28, 1988, would appear violative of the automatic stay of 11 U.S.C.A. § 362(a)(5) (West 1979 & Supp.1990). *Smith v. First America Bank, N.A. (In re Smith)*, 876 F.2d 524 (6th Cir.1989) (Actions in violation of automatic stay are generally void).

**13.** At the outset of the trial, counsel for the defendant, First American, interposed an objection based on the parol evidence rule and statute of frauds to the admissibility of all evidence bearing on Exhibit "A" to the Herskowitz Deed as registered May 10, 1983. This objection was renewed on numerous occasions. All material evidence was received by the court subject to First American's objections.

**14.** As reregistered December 28, 1988.

. . . .

Q. All right. Mr. Hailey, I notice you signed the affidavit?

A. I did.

Q. Are the factual matters stated in that affidavit true and correct?

A. Yes, sir.

. . . .

CROSS EXAMINATION BY MR. WALKER:

Q. So is it correct to say, Mr. Hailey, that after the date of Exhibit 16 [15] ... that the leasehold premises where the Glenstone Lodge is located were owned at all times up to the sale of the partnership interest to Mr.—by Mr. Herskowitz, Mr. Thomas, et al., owned by Gatlinburg Motel Enterprises, a Limited Partnership?

A. Yes, sir.

. . . .

Q. At any time after 1982, in other words, from 1983 until today, or until you ceased to become involved with Gatlinburg Motel Enterprises, Ltd., did the limited partnership own any other interest in real estate in Sevier County, Tennessee?

A. No, sir.

. . . .

CROSS EXAMINATION BY MR. HUGHES:

. . . .

Q. Isn't it the case that you cannot say here today under oath that the Exhibit A which is a part of Exhibit 9 [16] in this proceeding is or was identical to the Exhibit A which you say previously to the best of your knowledge was attached to the Herskowitz Deed of Trust, which is Exhibit 4, at the time of its execution; now, is that correct?

A. May I answer it in my own way, Mr. Hughes?

. . . .

THE WITNESS: Mr. Walker came up with an affidavit which he had prepared and he came up with a description of the Glenstone Lodge property which was identified as Exhibit A which he had prepared. I am satisfied that that description is a correct description of the property. Had I prepared the affidavit, I would not have used the same language that he used, and I'm not trying to be critical of him, but when he used the word "the aforesaid Exhibit A was inadvertently detached," I cannot say that his Exhibit A is identical to whatever sheet of paper was shown on the deed of trust, but I can tell you that in my opinion it was a correct description and it was on a piece of paper that was attached. Now, I don't know whether that makes sense.

Q. I think you answered my question. Thank you. And again, sitting here today, you can't—you don't have before you and you can't definitely identify exactly what that Exhibit A that you're testifying to the best of your knowledge was attached back in 1983 what that looked like exactly, can you?

A. I can't tell you whether it said Schedule A or Exhibit A, or whatever. I can tell you that my best recollection is it was a piece of paper which had the correct description of the Glenstone Lodge property.

Herskowitz did not object to Mr. Hailey's testimony. He does not dispute that Exhibit "A" referenced in the May 10, 1983 Herskowitz Deed properly described the debtor's leasehold estate, nor does he dispute that Exhibit "A" was appended to the Herskowitz Deed at the time of its execution on May 10, 1983. Further, he does not dispute that the debtor transferred its interest in the leasehold estate to Al H.

15. Trial Exhibit 16 is an "Assignment Of Lease" dated September 30, 1973, through which the debtor acquired its interest in the leasehold estate.

16. Herskowitz Deed as reregistered December 28, 1988.

Thomas, Trustee, upon execution of the Herskowitz Deed, and that this transfer was made to secure payment of the Kellum Creek Note.

## AVOIDANCE OF HERSKOWITZ DEED

The plaintiff seeks to avoid the Herskowitz Deed under the "strong arm clause" of Bankruptcy Code § 544(a) which provides the trustee the rights of a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition; with the rights of a creditor with an execution against the property of the debtor as of the date of the petition; and with the rights of a bona fide purchaser of real property of the debtor as of the date of the petition. 11 U.S.C.A. § 544(a) (West Supp.1990).

Resolution of the issue of the plaintiff's ability to avoid the Herskowitz Deed under § 544(a) requires a two-step analysis. First, it must be determined whether the Herskowitz Deed is effective as between the debtor and Herskowitz. If so, it must then be determined whether the Herskowitz Deed, by virtue of its registration on May 10, 1983, is effective as to third parties, including the plaintiff.

Initially, the defendants, Sevier County Bank, First American, and First National, contend that the Herskowitz Deed is violative of the Statute of Frauds.[17] Under Tennessee law, "a deed of trust ... is a conveyance of an estate or an interest in land and as such within the meaning of the Statute of Frauds." *Lambert v. Home Federal Savings and Loan Assoc.*, 481 S.W.2d 770, 772–73 (Tenn.1972).

■ The Statute of Frauds is a defense personal to the party sought to be charged, and is not a defense available to a third party. The rule is stated generally as follows:

**17.** As enacted in Tennessee, the Statute of Frauds provides in material part:

**Writing required for action.**—(a) No action shall be brought:

. . . .

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than

The intent and purpose of the statute of frauds are to give to a party to an oral contract against whom the enforcement of the contract is sought by the other party, the right to avail himself of the provisions of the statute as a defense to his liability. In other words, the statute is intended for the protection of the party sought to be charged. The statute, when asserted by him as a defense, is a defense to an action against him either for the enforcement of the oral contract as such or for damages for its breach. The defense, however, is a personal one. . . . It can be interposed only by a party to an oral contract who is sought to be charged thereon, and his privies. *The defense of the statute of frauds is not available to strangers to the agreement* or to the public at large.

. . . .

The rule that the defense of the statute of frauds is a defense personal to parties to the contract and their privies, and cannot be invoked by third persons for their own benefit when the parties to the contract are willing to waive the requirements of the statute, applies as well to creditors of a party as to any other strangers to the contract. That the creditor cannot urge the statute of frauds where the parties to an oral or unenforceable contract make no objection thereto is recognized by a number of cases. This is true even though the statute declares an oral contract within its terms to be void. The right of a creditor of one party to avail himself of the statute in the case of an executory oral agreement has been denied even in cases in which the other party to the contract is in effect seeking to enforce it. *A conveyance or transfer by a debtor made pursuant to an oral contract unenforceable under the statute of frauds*

one (1) year ... unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized. Tenn.Code Ann. § 29-2-101 (Supp.1990).

*cannot be attacked by his creditors* upon the ground that the transfer was voluntary and therefore without consideration.

73 Am.Jur.2d *Statute of Frauds* § 576, § 579 (1974) (footnotes omitted and emphasis added). This is the rule in Tennessee. *McDonald v. Stone,* 45 Tenn.App. 172, 321 S.W.2d 845, 851 (1958) ("A stranger, even a creditor, cannot plead the statute of fraud. [sic]").

■ This court concludes that the Statute of Frauds cannot be an issue in this adversary proceeding. There is no dispute between the plaintiff and Herskowitz as to the property intended under the Herskowitz Deed to secure the Kellum Creek Note. That property was the debtor's leasehold estate in Sevier County, Tennessee, upon which the debtor operated the Glenstone Lodge. The debtor owned no other interest in real property.

■ The three defendant banks, creditors of the debtor, have no standing to raise the defense of the Statute of Frauds. *See, McDonald,* 321 S.W.2d at 851; *Culwell v. Culwell,* 23 Tenn.App. 389, 133 S.W.2d 1009, 1012 (1939). Neither do they have standing to object on the basis of the parol evidence rule to evidence offered by the plaintiff, undisputed by Herskowitz, that Exhibit "A" to the Herskowitz Deed contained a description of the debtor's leasehold estate, and was appended to the Herskowitz Deed at the time of its execution on May 10, 1983. The Tennessee Supreme Court has stated:

The rule that parol contemporaneous evidence is not admissible to alter or vary the terms of a valid written instrument has reference only to the parties to the instrument. It cannot affect third parties who, if it were otherwise, might be prejudiced by things contained in the writing contrary to the truth, through carelessness, ignorance, or fraud....

*Nashville Interurban Ry. v. Gregory,* 137 Tenn. 422, 193 S.W. 1053, 1056–57 (1917).

The Banks also contend that the Herskowitz Deed is unenforceable since it does not secure an obligation of the debtor, but, instead, secures an obligation of Kellum Creek.

It is undisputed that the debtor, through its business, the Glenstone Lodge, carried the Kellum Creek Note as a liability on its balance sheet (Trial Exhibit 24). It is also undisputed that the debtor made all payments due Herskowitz under the Kellum Creek Note subsequent to its execution on May 10, 1983.[18] Whether the debtor assumed the Kellum Creek Note or acted as a guarantor or surety is immaterial.

The three defendant banks, again, seek to interpose the Statute of Frauds as a defense to the validity and enforceability of the Herskowitz Deed.[19] For reasons previously discussed, the banks have no standing to raise this issue nor do they have standing to object on the basis of the parol evidence rule to relevant evidence introduced by the plaintiff regarding payment of the Kellum Creek Note.

In sum, it is undisputed that the May 10, 1983 Herskowitz Deed was intended by the debtor and Herskowitz to secure the Kellum Creek Note with the debtor's leasehold estate in Sevier County, Tennessee. As between Herskowitz and the debtor, the Herskowitz Deed is binding and enforceable.

The banks are not prejudiced. The deed of trust executed by the debtor on March 7, 1986, in favor of Sevier County Bank was taken by Sevier County Bank with the understanding that its deed of trust would be junior to deeds of trust existing in favor of First Federal and Herskowitz.[20]

18. *See supra* note 4.

19. A "promise to answer for the debt, default, or miscarriage of another person" is within the Statute of Frauds. Tenn.Code Ann. § 29–2–101(a)(2) (Supp.1990). *See In re Estate of Dickerson,* 600 S.W.2d 714, 717 (Tenn.1980) ("[A]n undertaking which renders the promisor a guarantor or surety upon a debt owing by a third person who is primarily liable is within the statute of frauds...." (quoting 72 Am. Jur.2d *Statute of Frauds* § 180 (1974)).

20. A title insurance commitment issued to Sevier County Bank on March 6, 1986, by First American Title Insurance Company of Mid–America (Trial Exhibit 19), and a title examination dated March 6, 1986 (Trial Exhibit 20) from

The counterclaims and cross-claims of the defendants, First American and First National, seeking a determination that Sevier County Bank's deed of trust is superior to the Herskowitz Deed and, therefore, to the interest of the plaintiff, will be dismissed.

The second, and dispositive issue, is whether the Herskowitz Deed was perfected on March 23, 1987, the date the debtor filed its voluntary petition under Chapter 11. Resolution of this issue turns exclusively upon whether the Herskowitz Deed, as registered in the office of the Sevier County Register of Deeds, contains a description legally sufficient under Tennessee law to describe the property it purports to convey.

Tenn.Code Ann. § 66–26–101 (1982) provides that all instruments mentioned in § 66–24–101 [21] "shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the Register, unless otherwise expressly provided."

■ By authority of Tenn.Code Ann. § 66–26–101 (1982), a deed of trust is effective between the parties thereto without registration, but not as to other parties without notice. *Fidelity Mut. Life Ins. Co. v. Wall,* 167 Tenn. 207, 68 S.W.2d 108, 110 (1934), *citing Wilkins v. McCorkle,* 112 Tenn. 688, 80 S.W. 834 (1904). *See In re Hutchens,* 69 B.R. 402, 405 (Bankr.E.D. Tenn.1987); *West v. United American Bank (In re West),* 23 B.R. 48 (Bankr.E.D. Tenn.1982).

■ To provide notice to third parties upon registration, a deed of trust in Tennessee must describe the property to be conveyed. *See Southern Bldg. & Loan Ass'n v. Rodgers,* 104 Tenn. 437, 58 S.W. 234 (1900). In *Rodgers,* the Tennessee Su-

preme Court was confronted with the following facts: Rodgers gave his note to Southern for $600.00, and executed a deed of trust to secure payment. Hawkins, a judgment creditor of Rodgers, sought to sell the land under an execution. Southern sought to restrain the sale in favor of Hawkins, to correct the defective registration of its deed of trust, and to foreclose its deed of trust. Hawkins cross-claimed, asserting that Southern's deed of trust was void against creditors because it was not properly registered, and sought to have Rodgers' lot sold to satisfy his judgment. The trial court dismissed Southern's action against Hawkins, and granted Hawkins the relief prayed for in his cross-claim. In affirming the trial court, the Tennessee Supreme Court held:

> This court's conclusions in regard to the questions raised may be briefly stated.
>
> 1. That registration of the deed of trust was fatally defective, in that it described no property at all, but only gave some inconsistent calls and unclosed lines. The first line called for in the registered description runs north 163 feet; the second one runs back on the first, south 109 feet; the third and last one runs east 263 feet, forming two right angles, without more.
>
> . . . .
>
> The spreading of such a description upon the register's book gave the grantee nothing, and interposed no obstruction against creditors of the grantor.

58 S.W. at 235.

Herskowitz, in proposed findings of fact and conclusions of law submitted to the court, cites *Sheffield v. Franklin,* 32 Tenn. App. 532, 222 S.W.2d 974 (1947), *cert. denied* 1948, for his contention that "Tennes-

---

C. Dan Scott, Sevier County Bank's title attorney, both list the First Federal deed of trust and the Herskowitz Deed as exceptions to the debtor's unencumbered interest in its leasehold estate.

**21.** Tenn.Code Ann. § 66–24–101 (Supp.1990) provides in material part:

**Writings eligible for registration.**—(a) The following writings may be registered:

. . . .

(8) All mortgages and deeds of trust of either real or personal property. . . .

see courts are quite liberal in the area of adequacy of description." *Sheffield* involved a partition suit in which the disputed deed contained a lengthy description of boundary lines by poles and "pointers" of the property sought to be conveyed, but failed to refer to the civil district and county in which the land lies. The deed, however, further described the property as containing 250 acres, more or less. The Tennessee Court of Appeals in holding that the deed was not void for insufficiency of description, stated:

> The description before us contains two important particulars. . . . These are, the reference to appropriate pointers and the fact that one of the boundary lines is described as running south with the creek.

> . . . .

> In addition to the foregoing considerations, the fact that the number of acres conveyed is stated in the deed is significant, for the rule is that a call for quantity may sometimes be resorted to for the purpose of locating and identifying land. Certainly it is true that a deed to be valid must designate the land intended to be conveyed with reasonable certainty. But with respect to executed contracts conveying real property, the courts have been extremely liberal in construing the description with a view of determining whether it is sufficiently definite and certain to identify the land and make the instrument operative as a conveyance, and it is said to be a broad general principle "that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed". "It is sufficient . . . if the description in the deed or conveyance furnishes a means of identification of the land or by which the property conveyed can be located".

> The test is whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can locate the land and establish the boundaries.

> . . . .

> Under the rule announced by the foregoing authorities, we think the description before us was sufficient. . . . [T]he deed itself shows that some particular tract of land was intended and hence it was permissible to resort to parol evidence to show the location and boundaries of the tract mentioned and to enable the court to find it.

> . . . .

> In the instant case the boundaries are supplied and it was necessary only for the chancellor to supply by parol the location.

222 S.W.2d at 978–80 (citations omitted).

*Herskowitz* also relies upon the Tennessee cases of *Wilson v. Calhoun,* 157 Tenn. 667, 11 S.W.2d 906 (1928), *Jones v. Mabry,* 32 Tenn.App. 675, 225 S.W.2d 561 (1949), *cert. denied* 1949, and *Brummitt v. Brown,* 159 Tenn. 612, 21 S.W.2d 626 (1929), in support of his argument that the court can resort to extrinsic evidence to provide a description to validate the Herskowitz Deed for registration purposes. In *Wilson* the Tennessee Supreme Court found that a mortgage instrument containing an "exceptionally full and complete" description, with the exception that the name of the state and county in which the land lay was omitted, was sufficient to identify the property. In *Jones,* the Tennessee Court of Appeals was confronted with a deed containing the following property description:

> "[O]ne acre of land lying on the North Fork of Swan pon [sic] Creek to be laid of [sic] So as to contain the house as near the center as possible So that no part of the Swamp north of Said house is the acre for the Encouragement of Education and the Spread of the Gospel . . ." provided "that said Church is to be govern by the same Rules and Regulations that Methodist Churches is agreeable to the Rules layed [sic] down in the Methodist Discipline."

225 S.W.2d at 562. The same deed also gave the grantor "one-half acre of land on

the top of hill where the grave yard now is to Said Trustees in trust for the purpose of a Burying Ground...." *Id.* The *Jones* court held that the description in the deed was sufficient and that "[a] deed of conveyance is not void for want of an adequate description of the property intended to be conveyed if it identifies the land with reasonable certainty." 225 S.W.2d at 563. In *Brummitt* the Tennessee Supreme Court held that a deed conveying "[a]ll my undivided interest in the estate of my father" which gave the father's name and county of residence, and date of death, was not void for want of a sufficient description. The court stated that "a deed or mortgage describing the subject-matter as all of the grantor's property, or all of his property in a certain locality, is not void for want of sufficient description." 21 S.W.2d at 628.

The distinguishing characteristic in all of the cases relied upon by Herskowitz is that there is a description of the property sought to be conveyed in each of the disputed deeds sufficient to show that some particular tract was intended to be conveyed. The Tennessee Supreme Court and Court of Appeals allowed the introduction of extrinsic evidence in each case, not to alter or contradict the terms of the deed, but to particularize the description already provided in the deed. The Herskowitz Deed contains no description of any particular tract of land nor is there a reference to the state and county in which the land lies. The only reference to the property conveyed by the debtor under the Herskowitz Deed is to the property "as is more fully described in Exhibit "A" attached hereto and made a part hereof...." There is no Exhibit "A" attached to the Herskowitz Deed registered May 10, 1983.

■ Herskowitz contends that a reference in paragraph (21) of the Herskowitz Deed that "[t]his Leasehold Deed of Trust is subordinate to a deed of trust in favor of First Federal Savings & Loan Association (now Home Federal of Sevierville) dated August 30, 1977" is a reference to a record-

ed instrument on the debtor's leasehold estate, which contains a metes and bounds description.[22] Herskowitz argues, therefore, that reference in the Herskowitz Deed to the First Federal deed of trust provides third parties with notice of the property the Herskowitz Deed encumbers. The court disagrees.

To allow the First Federal deed of trust to provide the description missing from the Herskowitz Deed would supply a material part of the Herskowitz Deed solely by extrinsic evidence. The Tennessee cases discussed herein have adhered to principles enunciated by the Tennessee Supreme Court since 1868. These principles were stated by the court as follows:

> If the agreement itself shows that some particular tract was intended, then parol proof is admissible to show the location and boundaries of the tract mentioned, and to enable the Court to find it. Thus, if the agreement had described the premises as "my tract of nine acres and sixty-six poles, near the junction," etc., there could be no uncertainty that a particular tract of land was meant, and even if the grantor had two tracts answering to that description, that would create no uncertainty upon the face of the deed, but only after the introduction of proof to that effect.

> But an instrument describing the premises as "a tract," etc. ... does not specify any tract of land. Every tract of nine acres and sixty-six poles, that could be surveyed in the vicinity indicated, would fulfill the conditions of this description with equal accuracy; and the object of the parol proof proffered in this case, would be, not to point out the tract which the instrument mentions, but to furnish grounds of inference from the fact that defendant had but one tract in that vicinity, that the parties must have intended the instrument to describe that tract and no other.

> Parol evidence for the first purpose above mentioned is admissible, because it

**22.** The First Federal deed of trust was recorded in the Sevier County Register of Deeds Office on

August 30, 1977, in Trust Book 188, page 411.

does not alter or contradict the effect or terms of the instrument, but only particularizes the description which the instrument gives of the premises. But parol evidence in the second case, is inadmissible, because its effect is to supply by parol, a material part of the agreement....

*Dobson v. Litton,* 45 Tenn. 616, 619–20 (1868).

In sum, Herskowitz cannot resort to an unconnected reference to the First Federal deed of trust to supply the Herskowitz Deed with a description of the debtor's leasehold estate. The First Federal deed of trust was not intended by Herskowitz and the debtor to provide a description in the Herskowitz Deed nor does it aid in particularizing a description already in the Herskowitz Deed.[23] The Herskowitz Deed is totally devoid of a description, and the court cannot resort to extrinsic evidence to provide that description.

The Herskowitz Deed is unperfected under Tennessee law as to third parties, including the plaintiff trustee in bankruptcy. The lien of the Herskowitz Deed is accordingly avoidable by the plaintiff under 11 U.S.C.A. § 544(a) (West Supp.1990). Pursuant to 11 U.S.C.A. § 551 (West 1979), the lien, upon avoidance, will be preserved for the benefit of the estate.

For the reasons discussed above, the interest of the plaintiff in the $102,780.62 received from Sevier County Bank upon foreclosure of the first deed of trust is superior to the interest of the defendants, Herskowitz, Sevier County Bank, First American, and First National.

## IV

## THE "ORDER FOR ADEQUATE PROTECTION"

The plaintiff seeks an order vacating the "Order For Adequate Protection" entered in the debtor's case on July 15, 1988. Additionally, he seeks to recover from Herskowitz and/or the thirteen individual defendants $202,883.40 in payments made by the debtor pursuant to the "Order For Adequate Protection."

The proof establishes that all payments made pursuant to the July 15, 1988 "Order For Adequate Protection" were made directly to Herskowitz; that no portion of the payments have been distributed by Herskowitz to the individual defendants; that the only disbursements made by Herskowitz from the payments received from the debtor were for professional fees and expenses to attorneys, accountants and appraisers; and that Herskowitz has on deposit from the payments made by the debtor the sum of $68,417.51. Of the funds remaining in his possession, the sum of $134.68 is on deposit in a "N.O.W. Account" and $68,282.83, is on deposit in an interest bearing "Super Saver Account."

Circumstances surrounding execution of the July 15, 1988 "Order For Adequate Protection" are discussed previously and in considerably greater detail in the Memorandum accompanying the court's order entered May 19, 1989, denying Herskowitz's motion for summary judgment.[24] These circumstances need not be restated.

Clearly, the July 15, 1988 "Order For Adequate Protection" formalizes an agreement entered into between Herskowitz and the debtor under the mistaken belief that the Herskowitz Deed validly encumbered the debtor's leasehold estate. It was not until late December, 1988, subsequent to dismissal of the debtor's Chapter 11 case, that the debtor and Herskowitz determined that the Herskowitz Deed, registered May 10, 1983, was defective.

On December 30, 1988, five months after entry of the "Order For Adequate Protec-

---

**23.** *See Harriman Land Co. v. Hilton,* 121 Tenn. 308, 120 S.W. 162 (1908) (A deed describing the land as "[a] 500-acre tract, deed from J.F. Scott to William Lewellyn in the year 1852, lying on the east side of Emory river, in district No. 4," sufficiently referred to the Scott deed, and was, therefore, not invalid for want of a sufficient description where the Scott deed was of record and described the land by metes and bounds). This holding adheres to the principles set forth in *Dobson* and its progeny as the disputed deed shows an intention by the grantor to convey a particular tract.

**24.** *See supra* note 8.

tion," Herskowitz filed a "Post–Dismissal Report" stating that "[o]n Friday, December 23, 1988 ... counsel for Herskowitz was advised by title counsel for Sevier County Bank ... that the deed of trust held by Herskowitz was defective." Also on December 30, 1988, the debtor filed a "Combined Motion To Alter Or Amend Judgment And Motion To Convert The Case To A Chapter 7 Case" stating that debtor's counsel first became aware of the defect in the Herskowitz Deed on December 28, 1988, when it was reregistered. It is undisputed that the three defendant banks and their respective counsel were also unaware of the defect in the Herskowitz Deed until late December 1988 or early 1989.

Federal Rule of Civil Procedure 60(b), incorporated into Fed.R.Bankr.P. 9024, provides in material part:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect.... The motion shall be made within a reasonable time, and ... not more than one year after the judgment, order, or proceeding was entered or taken....

One commentator observes:

Relief can be had under Rule 60(b)(1) not only for the mistake, etc. of the moving party, but also from that of other parties to the action, the clerk, and even the court. There is a considerable body of federal decisions dealing with "mistake, inadvertence, surprise, or excusable neglect," which decisions are generally in accord with the proposition that 60(b) is a remedial rule to be liberally construed.

Moore's Manual, *Federal Practice and Procedure,* § 26.04 (1990) (footnotes omitted).

■ Circumstances surrounding the agreement entered into between the debtor and Herskowitz which led to entry of the July 15, 1988 "Order For Adequate Protec-

tion" clearly suggest the applicability of Rule 60(b) for the purpose of obtaining relief from that order. However, Rule 60(b) is applicable only to a *final* judgment, order, or proceeding. "Interlocutory orders and judgments are ... not within the restrictive provisions of 60(b), but they are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." Moore's Manual, *Federal Practice and Procedure,* § 26.03 (1990) (footnote omitted).

One court, in its discussion of the finality of adequate protection orders, observed:

Adequate protection is a device intended to provide additional protection against loss to a secured creditor arising from continuation of the automatic stay of 11 U.S.C. § 362 as called for by the circumstances of the case. By its nature, adequate protection is not final unless all parties later treat it as final....

*Allis–Chalmers Credit Corp. v. Nordyke (In re Nordyke),* 43 B.R. 856, 860 (Bankr. D.Or.1984) (citation omitted).

■ It is self-evident that the July 15, 1988 agreed "Order For Adequate Protection" was not intended by the debtor and Herskowitz to be a final order. The "Order For Adequate Protection" on its face leaves open for future resolution several issues raised by Herskowitz in his motion for adequate protection filed June 14, 1988. Herskowitz's motion provides in material part:

7. The market value of the leasehold is $6,885,000....

8. The value of Herskowitz's collateral exceeds the amount of his claim by only $306,704.60....

....

10. There is thus not a meaningful or significant "equity cushion" to protect the Herskowitz claim and Herskowitz is accordingly entitled to adequate protection....

*Motion Of Marvin Herskowitz, Trustee For Adequate Protection,* at p. 2 (Trial Exhibit 7).

The central issue raised by Herskowitz in his adequate protection motion was the value of the debtor's leasehold estate. Herskowitz averred his posture to be that of an oversecured creditor, whose position was eroding due to a diminution of his equity cushion. Essential to a determination of whether the debtor was required to provide Herskowitz adequate protection was not only a determination of the validity of the Herskowitz's Deed, but also the amount of Herskowitz's claim, the value of the debtor's leasehold estate, the depreciating or appreciating nature of Herskowitz's collateral, and the degree of erosion, if any, of Herskowitz's equity cushion.

The "Order For Adequate Protection" provides that it is entered "without prejudice to the rights of each party to contest and litigate the amount of ... [Herskowitz's] claim and the valuation of the assets of the debtor-in-possession." Herskowitz and the debtor specifically reserved for future litigation two issues essential for a determination of Herskowitz's continued entitlement to adequate protection: (1) the amount of Herskowitz's claim; and (2) the value of the debtor's leasehold estate. In effect, the "Order For Adequate Protection" does nothing more than require the debtor to make those monthly payments required under the terms of the Kellum Creek Note. The $33,813.90 monthly payments the debtor was required to make pursuant to the "Order For Adequate Protection" have little if any relationship to true adequate protection payments the debtor might have been required to provide Herskowitz under Code § 361.[25]

A leading treatise on federal practice and procedure has observed:

Consent judgments entered upon settlement by the parties may assume forms that range from simple orders of dismissal with or without prejudice to detailed decrees. Whatever form is taken, the central characteristic is that the court has not actually resolved the substance of the issues presented.... However close the examination may be, the fact remains that it does not involve contest or decision on the merits. Instead, the judgment results from a basically contractual agreement of the parties. It can be entered only if the parties have in fact agreed to entry, it is to be enforced in accord with the intent of the parties, and it can be vacated according to basically contractual principles of fraud, ignorance, mistake, or mutual breach.

18 Wright, Miller, & Cooper, *Federal Practice and Procedure*, § 4443, p. 383 (West 1981) (footnotes omitted).

The intent of the debtor and Herskowitz that the "Order For Adequate Protection" not be final is evidenced by two factors: (1) the clear and unambiguous language of the order as to its entry "without prejudice" to litigate in the future those issues relating to the amount of Herskowitz's claim and the value of the debtor's leasehold estate; and (2) the failure of the order to resolve these issues essential to a requirement of adequate protection, *i.e.*, collateral value, equity, and validity of the Herskowitz Deed.

The July 15, 1988 "Order For Adequate Protection" does not constitute a final judgment on issues raised by Herskowitz in his June 14, 1988 motion for adequate protection. The court may accordingly modify or vacate the "Order For Adequate Protection" to the extent necessary to afford relief to the parties. Fed.R.Civ.P. 60(b) has no application.

The plaintiff is entitled to limited relief. The "Order For Adequate Protection" will be vacated, but only to the extent that the plaintiff will be allowed to avoid payments from the debtor to Herskowitz totalling $68,417.51, plus such additional interest as has accrued on Herskowitz's "Super Saver Account." This sum represents the

**25.** Section 361 provides in material part:
When adequate protection is required under section 362 ... of this title ... such adequate protection may be provided by—
(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title ... results in a *decrease in the value of such entity's interest in such property.*
11 U.S.C.A. § 361 (West 1979 & Supp.) (emphasis added).

amount of funds received from the debtor which remain in Herskowitz's possession after payment of professional fees and expenses.

The mistaken belief that the Herskowitz Deed was validly perfected was shared not only by the debtor and Herskowitz, but also by the defendants, Sevier County Bank, First American, and First National. It would be manifestly unfair and unjust to require Herskowitz to assume total responsibility for a mistake shared equally by all those who were principally involved in the debtor's Chapter 11 case. It would be equally unfair to allow Herskowitz to retain funds in his possession which should rightfully be distributed to unsecured creditors.

The effect of the court's decision to vacate, albeit in a limited manner, the July 15, 1988 "Order For Adequate Protection" will be to validate payments to Herskowitz totalling $134,465.89, and allow the plaintiff to avoid, pursuant to Bankruptcy Code § 549(a), the debtor's postpetition transfer to Herskowitz of payments totalling $68,-417.51.[26]

## V

### LIABILITY OF INDIVIDUAL DEFENDANTS ON AVOIDED TRANSFERS

Code § 550(a) provides in material part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C.A. § 550(a) (West 1979 & Supp. 1990).

Counsel for the plaintiff was queried by the court at the conclusion of the trial as to the basis of the plaintiff's claim against the thirteen individual defendants. The court's query was premised upon the undisputed fact that all payments made by the debtor pursuant to the "Order For Adequate Protection" were made directly to Herskowitz, and that Herskowitz made no distribution to the beneficiaries of the Kellum Creek Note. Plaintiff's counsel stated that the individual defendants were immediate transferees of the payments received from the debtor in that each received a direct benefit by virtue of Herskowitz's payment of professional fees. This argument, meritorious or not, need not be considered in light of the court's determination that the plaintiff is entitled to avoid payments made by the debtor to Herskowitz solely to the extent of the funds remaining in Herskowitz's possession. Herskowitz is the initial transferee of the funds transferred by the debtor. There are no immediate or mediate transferees. Liability for the avoided transfers rests exclusively in Herskowitz.

## VI

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate judgment will be entered as follows: (1) dismissing the counterclaims and cross-claims filed by the defendants, First American and First National; (2) avoiding the lien of the Herskowitz Deed; (3) declaring the plaintiff's interest in the $102,780.62 in surplus funds realized from foreclosure of the debtor's leasehold estate superior to the interest of the defendants, Herskowitz,

---

26. Bankruptcy Code § 549(a) provides in material part:

[T]he trustee may avoid a transfer of property of the estate—
(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
(B) that is not authorized under this title or by the court.

11 U.S.C.A. § 549(a) (West Supp.1990).

The court's determination that the July 15, 1988 "Order For Adequate Protection" should be vacated in part, removes, as to the $68,417.51 remaining in Herskowitz's possession, the exception under subsection (2)(B) that a transfer is not avoidable by the trustee under section 549(a) where a transfer of property of the estate was "authorized ... by the court."

Sevier County Bank, First American and First National; (4) vacating the July 15, 1988 "Order For Adequate Protection" in the manner and to the extent set forth in this Memorandum; (5) avoiding payments made by the debtor to Herskowitz in the amount of $68,417.51; (6) allowing the plaintiff to recover the sum of $68,417.51 from Herskowitz together with interest accrued on Herskowitz's "Super Saver Account"; (7) dismissing the complaint, as amended, filed against the thirteen individual defendants as to all claims asserted by the plaintiff under Code § 549; and (8) fixing a trial date for all claims asserted by the plaintiff under Code § 547.