NEEDHAM v. CALDWELL et al.—154 S. W. (2d) 535.

Eastern Section.    July 8, 1941.

Petition for Certiorari denied by Supreme Court, October 4, 1941.

Caldwell, Brown & O'Dell, of Bristol, for appellants.

Joe W. Worley, of Bristol, and Jones & Woodward, of Bristol, Va., for appellee.

PORTRUM, J. ·The issues involved in this case are stated succinctly by the Chancellor in his opinion, and rather than restate the issues we copy here the opinion for the statement of facts and his conclusions:

"The suit was brought to enforce payment of two purchase money notes for the sum of $816.67 each, and accrued interest, executed by John C. York on July 2, 1928, in part payment of lots 16, 7, and 8, block 51, Fairmount Land Company's Addition to Bristol, Tennessee, the notes being secured by lien retained in deed.

"John C. York having sold lot number 8, above, to Joe Grubbs and wife, he prevailed upon complainant to release the lien in so far as that lot was concerned. It is averred that complainant went to the register's office on September 24th, 1928, for the purpose of releasing the lien as to said lot, that a formal rubber stamp form of release was placed on the margin of the record where complainant's deed was recorded, and that he signed it, and later or recently found out he had released the lien as to all three lots embraced in his deed; he avers, in substance, that he was not asked to release except as to lot Number 8, that he did not intend to do so, and that he did so by inadvertence and through a mutual mistake. Complainant seeks a reformation of the release or to have it declared void in-so-far as lots 16 and 7 are concerned.

"J. C. York, on November 30, 1930, gave a deed of trust on lots 16 and 7, along with other lots, to Joseph A. Caldwell, Trustee, to secure the First National Bank for borrowed money. The deed of trust contains the following language:

"'. . . Being the same property purchased by the parties of the first part from V. A. Needham by deed of record in the Registrar's office in Bristol, Tennessee, in Deed Book 54, Page 580. There is a balance due upon the purchase money for these lots of $1633.34, and this conveyance is made subject to said vendor's lien.'

"And in the warranty clause of the same deed is found:

"'. . . And that same are unencumbered except as heretofore stated.'

"The contention of the defendant is that the lien retained in complainant's deed was released on September 24, 1928, and that the lien of the deed of trust of November 30, 1930, takes priority and constitutes a first lien on the property. It is argued that the lien was released more than ten years ago and that complainant's remedy for reformation is barred by the ten year statute of limitations.

"Passing the question of reformation, it is not apparent how defendant can take a position inconsistent with the terms of the

instrument under which he holds. Regardless of the lien which was expressly retained by complainant in his deed to J. C. York, he had an implied lien, as between himself and his vendee, which was available to him until barred by the statute of limitations. By the express terms of the deed of trust to defendants, he took subject to a recognized outstanding vendor's lien to secure a balance of purchase money of $1633.34, and, under the authorities, he is estopped from questioning the validity of such lien.

"The case is controlled by the reasoning in Christian v. John, 111 Tenn., 92 et seq. [76 S. W., 906, 908], quoting Jones on Mortgages, Sec. 735 as follows:

" ' "When one purchases land expressly subject to a mortgage, the land conveyed is as effectually charged with the incumbrance of the mortgage debt as if the purchaser had expressly assumed to pay it. . . . The difference between the purchaser's assuming the payment of the mortgage, and simply buying subject to the mortgage, is simply that in the one case he makes himself personally liable for the payment of the debt, and in the other case he does not assume such liability. In both cases he takes the land charged with the payment of the debt, and is not allowed to set up any defense to its validity, as, for instance, that the mortgage is void, wholly or in part on account of usury. Jones on Mortgages, sec. 736; Swope v. Jordan, 107 Tenn. [166], 173, 64 S. W., 52; Shankland v. Nelson, 1 Tenn. Ch., 459; O'Conner v. O'Conner, 88 Tenn., 76, 12 S. W., 447, 7 L. R. A., 33.'

"Also at page 102 [of 111 Tenn., at page 908 of 76 S. W.] the Court said: '. . . But all these objections are set at rest by the express assumption of this mortgage, and the acceptance of the conveyance subject to this condition. They are now estopped to attack the validity of the mortgage, or to show that it was not an existing incumbrance at the date of their contract, because barred by the statute of limitations.'

"It will be noticed that the reasoning is that by expressly recognizing an outstanding lien, a purchaser estops himself from questioning the lien.

"The defendant relies upon, Robinson v. Owens, 103 Tenn., 91 [52 S. W., 870], and Sharp v. Fly, 9 Baxt., page 4, holding that an implied vendor's lien may be lost or defeated by the vendee's sale and conveyance of the land before the institution of suit to enforce it. These decisions are not controlling for the reason that there was no such recognition of an outstanding purchase money obligation as appears in the instant case. In the instant case the property was taken subject to an outstanding purchase money obligation, and it results that it was taken charged with the payment of that obligation and the purchaser will not be allowed to dispute it.

"Such is the holding of our Supreme Court. Other Courts reach the same result upon somewhat different reasoning, but the result is the same. Commercial & Farmers' Bank v. Vass, 130 N. C., 590, 41 S. E., 791."

Upon this opinion the court entered a decree finding first "that the plea of the defendant Mrs. John C. York, of the six-year statute of limitations as to the debt of complainant be and is sustained, and no personal judgment is decreed against her." Second, "that complainant has a lien for the unpaid purchase money on the property described as: 'Lots 16 and 7 in Block 51 of Fairmount Land Company's Addition in Bristol, Tennessee. . . .' And a recovery of $1924 is adjudged to the complainant, supported by said lien, and it is adjudged and decreed that complainant's lien is prior and superior to the said lien of the First National Bank of Bristol, created by said deed of trust to Joseph A. Caldwell, Trustee." Following this adjudication is an order of sale, and the grant of a discretionary appeal to this court which has been perfected.

The material issues are presented in the first three assignments of error, which are as follows:

Assignment 1. "The court erred in decreeing that the complainant in the court below has a lien for the unpaid purchase money on the property involved in the litigation. This was error because the complainant, having released his retained lien by his laches and neglect for over ten years was precluded by the ten-year statute of limitations from rectifying his action and his equitable lien was barred when the debt was barred."

Assignment No. 2. "The court erred in decreeing a lien on the property involved after sustaining the plea of the statute of limitations of six years after the debt. This was error for the same reason as set forth under assignment 1, supra."

Assignment No. 3. "The court erred in decreeing the lien to complainant superior to the lien created in the deed of trust from John C. York and wife to Joseph A. Caldwell, Trustee. This was error because if the complainant had any lien, after executing the marginal release, it could have been only an implied vendor's lien and was lost after assignment of the notes to the Dominion National Bank and could not attach to the property involved and become prior to an express lien created by said deed of trust."

The applicable rule is stated in the case of Fidelity Mutual Life Insurance Company v. Guess, 171 Tenn., 205-213, 101 S. W. (2d), 694, 697, quoting from Jones on Mortgages, as follows:

"As between a mortgagee whose mortgage has been discharged of record solely through the act of a third party, which act was unauthorized by the mortgagee, and for which he was in no way responsible, and a person that has been induced by such cancellation to believe that the mortgage has been canceled in good faith,

and has dealt with the property by purchasing the title or accepting a mortgage thereon as security for a loan, the equities are balanced. In such case the rights will be settled in the order of time, and the prior mortgage must remain despite the apparent discharge. . . ."

In the case under review, the second lienholder was not misled by the mistaken release upon the record, and did not act to its prejudice because of the unauthorized release. The second lienholder recognized and acknowledged the existence of the lien in the first lienholder, and purposely took his security as a secondary lien, to secure past due indebtedness. To permit the bank to repudiate this recognition and assert a superior lien, because afterwards it was discovered that the first lienholder had through inadvertence released his lien upon all the lots would permit the bank to unjustly enrich itself at the expense of the first lienholder.

"Where a release or satisfaction of a mortgage is executed by a person who had no authority to give it, or who had authority to do so only on certain terms or conditions which were not complied with, equity may cancel or set aside the satisfaction, or, without formal action of that kind, may disregard it and enforce the mortgage notwithstanding, except as such release may be precluded by the necessity of protecting the rights of third persons. . . .

"On the same principle, a release or satisfaction entered by accident or inadvertence, as where it is made to apply to the wrong mortgage, or by a mistake as to an essential fact, such that it is not in accord with the real intention of the parties, may be set aside and the mortgage reinstated, except as the rights of third parties may prevent." Mortgages, 41 C. J., secs. 991 and 993.

The ten-year statute of limitations, Code 1932, section 8590, has no application to the cancellation of an unauthorized entry of release of a lien. Of course, by long neglect and the intervention of the rights of third parties, the holder of the lien might be barred by his laches, but there is no intervening right of third parties in this case. The general principle is stated as follows:

"Generally, where the release or satisfaction of the mortgage is the result of fraud, accident, or mistake, it will not inure to the benefit of a person acquiring an interest in the property, who did not rely or advance anything on the face of such discharge. As the discharge, under such circumstances, did not enter into, or induce the transaction, the annulment thereof and the restoration of the mortgage to its priority of lien does not operate as a prejudicial or place the person who acquired the interest in a worse position than he was before . . ." Mortgages, 41 C. J., sec. 548, page 590.

Laches arises not from the long delay in asserting the claim, but in the change of rights, the loss of evidence, and the inability

of the court to place the parties in status quo. These elements do not enter into this transaction.

The Chancellor should upon the facts as proven by the only witness introduced have disregarded the release as to the two lots in question and enforced the lien without reference to the question of reformation. The remedy was not by reformation, but of cancellation. He elected to disregard the express lien and adjudge that the first lienholder was entitled to an implied lien for the payment of the purchase money. And the appellant insists that an implied lien is barred at the expiration of the six-year statute, Code 1932, sec. 8600, barring the debt, and for this reason he insists the lien was barred. The lien was in fact an express lien retained in the deed, and was not lost by an erroneous cancellation brought about through mistake or inadvertence, and the ten-year statute, Code 1932, section 8590, is not applicable. The suit was instituted before the expiration of the period after maturity. The Chancellor having entered the correct decree, his adjudication will not be disturbed because he may have assigned the wrong reason. Stegall v. City of Chattanooga, 16 Tenn. App., 124, 66 S. W. (2d), 266.

The above holding that the lien was in fact an undischarged express lien makes inapplicable the remaining assignments which are based upon the holding that the lien was an implied lien. For the reasons stated, the court concurs in the adjudication made by the lower court, and the decree is affirmed; the case will be remanded to the lower court to carry out the order of sale under the terms provided. The cost of the appeal is attached against the appellant.