IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 26, 2011 Session

## ABN AMRO MORTGAGE GROUP, INC. v. SOUTHERN SECURITY FEDERAL CREDIT UNION

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-06-0802      Walter L. Evans, Chancellor**

**No. W2011-00693-COA-R3-CV - Filed November 17, 2011**

Appellant, the second mortgage holder on the subject property, appeals the trial court's determination that Appellee held a valid first mortgage on the property, when Appellee's mortgage was taken under a deed of trust that contained a scrivener's error that incorrectly identified the property's lot number. The trial court held that: (1) the scrivener's error was not fatal to Appellant's deed of trust as the instrument otherwise clearly identified the property; (2) Appellant's mortgage was superior to Appellee's; and (3) Appellee's bid at Appellant's foreclosure sale created a valid contract, under which Appellee owed Appellant the purchase price. Finding no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Harold D. Mangrum, Memphis, Tennessee, for the appellant, Southern Security Federal Credit Union.

T. Tarry Beasley, II, Memphis, Tennessee, for the appellee, ABN AMRO Mortgage Group, Inc.

### OPINION

On or about March 29, 2002, Charles A. Giacosa and his wife, Pamela Giacosa (the "Giacosas") obtained a first mortgage from First Residential Mortgage-Louisville on property known as 8320 Bon Lin Drive, Bartlett, Tennessee (the "Property") and more particularly described as:

Lot 10, Rolling Woods Subdivision, as shown on plat of record in Plat Book 38, Page 8, in the Register's Office of Shelby County, Tennessee, to which plat reference is hereby given for a more particular description of said property.

This being the same property as conveyed to Charles Giacosa and wife, Pamela Giacosa from Roland J. Holeczko and Candace D. Holeczko, husband and wife by Warranty Deed dated May 23, 2001, recorded June 29, 2001, in Book LD, Page 1101 in the Register's Office of Shelby County, Tennessee.

Parcel ID #B01-58-00277.

To secure the first mortgage, which was in the amount of $165,600.00, the Giacosas executed and delivered a Deed of Trust (the "First Deed of Trust") to First Residential Mortgage-Louisville, with Transcontinental Title as trustee. The First Deed of Trust was recorded on or about April 12, 2002, in the office of the Shelby County Register of Deeds, as Instrument No. 02-063717. At the time the First Deed of Trust was prepared, the lot number was erroneously listed as Lot 16, rather than Lot 10, which is the correct lot number. According to the subsequent foreclosure sale notification, ABN AMRO Mortgage Group, Inc. ("ABN") is the transferee/assignee of the First Deed of Trust.

On or about May 16, 2002, the Giacosas obtained a second mortgage on the Property (the "HELOC") from Southern Security Federal Credit Union ("Southern Security," or "Appellant"). The HELOC, which had a maximum principal amount of 41,400.00, was secured by a Deed of Trust (the "Second Deed of Trust") that was executed by the Giacosas in favor of Southern Security. The Second Deed of Trust was recorded on or about May 22, 2002, in the Office of the Register of Shelby County, as Instrument No. 02-086888. The legal description contained in the Second Deed of Trust correctly identified the Property as Lot 10.

It appears from the record, and particularly from the Affidavit of Jeri Keith, a loan officer for Southern Security, that Southern Security was aware, at the time of the execution of the Second Deed of Trust, that ABN held a first mortgage on the Property. According to Jeri Keith's Affidavit, the HELOC paperwork submitted by the Giacosas clearly indicated that ABN held the first mortgage on the property. Furthermore, Southern Security's own title search revealed the First Deed of Trust.

The Giacosas ultimately defaulted on the first mortgage held by ABN. Thereafter, ABN began foreclosure proceedings, including advertising the foreclosure sale of the

Property as "Lot 10." ABN appointed Priority Trustee Services of Tennessee, L.L.C. (together with ABN, "Appellees") as its Substitute Trustee. On April 13, 2006, Priority Trustee Services, on behalf of ABN, held a foreclosure sale as advertised and in accordance with the Bid Instruction Sheet and Tennessee law. Southern Security appeared at the sale, bidding $197,165.00 for the Property. As the successful bidder, Southern Security then tendered payment by cashier's check. Thereafter, by letter of April 17, 2006, Southern Security, by and through its Senior Vice President Joseph Reed, advised ABN that it had issued a stop payment order on the cashier's check. As grounds for the stop payment, Mr. Reed asserted Southern Security's belief that ABN did not hold a valid first mortgage on the Property, and that Southern Security was actually the first mortgage holder. On April 20, 2006, Southern Security held a foreclosure sale of the Property, claiming that ABN was a "subordinate lienholder."[1]

On April 21, 2006, ABN filed suit against Southern Security, its Substitute Trustee Harold Mangrum, and the Giacosas, seeking reformation of the First Deed of Trust to correct the scrivener's error, which erroneously identified the Property as Lot 16, rather than Lot 10.[2] By its complaint, ABN also asked the court to establish it as the first mortgage holder on the Property. Furthermore, ABN sought to enjoin Southern Security and Harold Mangrum from conducting any sale of the Property.

A hearing on the request for injunctive relief was held on May 2, 2006. By Order of May 5, 2006, the trial court found that ABN's request for an injunction was moot because the foreclosure sale had already occurred on April 20, 2006. On September 20, 2006, ABN was granted leave to file an amended complaint, which removed the request for injunctive relief and requested that Southern Security's foreclosure sale be set aside as it was based upon Southern Security's mistaken belief that it was the first mortgage holder.

Additional litigation followed, including the denial of ABN's motion for summary judgment. These proceedings are not relevant to the instant appeal and we will not tax the length of this opinion to recite that history herein. Suffice to say, a final hearing was held on February 3 and 17, 2011. By Order of February 25, 2011, the trial court found, in relevant

---

[1] At the Southern Security sale, the Property was purchased by William and Rita Trigg. The Triggs moved the court for permission to intervene and for leave to file a third-party complaint to clear title on the Property, which motion was granted by order of August 11, 2006. Ultimately, the Triggs were granted summary judgment, which upheld their possession of the Property. The Triggs are not a party to this appeal.

[2] ABN entered a voluntary non-suit as to the Giacosas. Mr. Mangrum was dismissed from the lawsuit because the foreclosure sale was completed prior to the filing of the original complaint. Consequently, Mr. Mangrum was no longer a necessary party. Neither the Giacosas, nor Mr. Mangrum are parties to this appeal.

part, as follows:

> 3. Joseph Reed, on behalf of . . . Southern Security. . . attended the foreclosure sale [i.e., the first foreclosure sale held by ABN] and bid $197,165.00 for the purchase of [ABN's] interest in the subject real property. Said bid having been accepted by Richard Fulton [acting as Substitute Trustee for ABN], the sale was completed and memorialization of said sale was given by Joseph Reed's tendering of Southern Security's check in the amount of $197,165.00 to Richard Fulton. The tendering of funds by Southern Security. . . confirmed the contract entered into by the parties pursuant to the published Notice of Foreclosure.
>
> 4. Southern Security . . . asserted an issue with the title on the real property known as 8320 Bon Lin . . . due to a scrivener's error in the lot number reflected on the original Trust Deed; however, the address of the property, the parcel number, the derivation clause, and other information contained on the face of said original Trust Deed clarifies the specific property purchased by [Southern Security] from [ABN] at foreclosure.
>
> 5. [ABN] has a duty to transmit a defendable Trustee's Deed to [Southern Security].
>
> *                              *                              *
>
> 7. [ABN] has a right to specific performance of the contract from [Southern Security] pursuant to the foreclosure sale held by [ABN].

Based upon these findings, the court ordered ABN to issue a substitute deed of trust in favor of Southern Security in order to correct the scrivener's error. The trial court further ordered Southern Security to issue payment in the amount of $197,165.00 to ABN; however, ABN's request for interest and attorney's fees was denied.

Southern Security appeals and raises one issue for review as stated in its brief:

> Did the Chancery Court err in finding a binding contract between the parties and giving the remedy of specific performance to [ABN] when [ABN] knowingly foreclosed on a

deed of trust, which was filed against the wrong property and failed to correct it before the foreclosure?

Because this case was tried by the court, sitting without a jury, this Court conducts a *de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. ***Wood v. Starko***, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

A determination of the priority of rights among the holders of liens and mortgages is solely a question of law when the parties do not dispute the facts. ***Bankers Trust Co. v. Collins***, 124 S.W.3d 576, 578 (Tenn. Ct. App. 2003); ***ATS, Inc. v. Kent***, 27 S.W.3d 923, 924 (Tenn. Ct. App. 1998) (citing ***Lucius v. City of Memphis***, 925 S.W.2d 522, 522 (Tenn. 1996)). When addressing questions of law, we review the trial court's ruling *de novo* upon the record and afford to it no presumption of correctness. ***ATS, Inc.***, 27 S.W.3d at 924.

From our reading of its appellate brief, Southern Security makes four arguments, namely: (1) that ABN was without standing to foreclose on the property, or to bring suit against Southern Security; (2) that ABN violated several maxims and principles of equity when it attempted to foreclose on an incorrect deed of trust because it was not the first lienholder on the Property; (3) that no contract existed between the parties because ABN could not provide clear title to the Property; and (4) that ABN has shown no damages, which would require specific performance. We will address each of these assignments of error in turn.

**Standing**

As noted above, the First Deed of Trust was executed in favor of First Residential Mortgage-Louisville, with Transcontinental Title as trustee. ABN is the company that attempted to foreclose on the First Deed of Trust. According to the sale advertisements and letters informing Southern Security of the foreclosure, ABN was the transferee or assignee of the First Deed of Trust. On appeal, Southern Security argues that ABN's status as assignee/transferee was never established in the lower court. Specifically, Southern Security contends that "no corporate representative or employee of [ABN or First Residential] testified at trial, nor were there any recorded or unrecorded documents introduced. . . at trial which would evidence that such transfer or assignment had taken place." Consequently, Southern Security asserts that ABN has no standing to either foreclose on the First Deed of

Trust, or to file the instant lawsuit.

We have reviewed the record and have determined that the standing argument was not raised in the trial court and appears, for the first time, in Southern Security's appellate brief. Because Southern Security did not raise the issue of standing in the trial court, it has waived the argument on appeal. ***Waters v. Farr***, 291 S.W.3d 873, 918 (Tenn.2009) (stating that issues not raised in the trial court are waived on appeal); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). However, even if we were to address the substance of this issue, there is uncontested evidence in the record, specifically the notices and letters that were exchanged during the course of this litigation, to indicate that ABN is the rightful transferee/assignee of the First Deed of Trust. Southern Security has offered no proof to contradict this assertion. Consequently, the evidence preponderates in favor of a finding that ABN is, in fact, the correct party with standing to foreclose and/or file suit for disputes arising under the First Deed of Trust.

### Whether ABN Held a Valid First Lien on the Property

The gravamen here is whether the fact that the description in the First Deed of Trust incorrectly described the Property as Lot 16 should negate ABN's status as first mortgage holder. Tennessee law requires that instruments conveying an interest in property include a description of the property. Tenn. Code Ann. § 66–5–103. The question, then, is whether a description and, in this case, a description that contains an error is sufficient to satisfy this requirement. We begin our inquiry with the discussion contained in 26A C.J.S. Deeds § 51 (2011), which provides, in relevant part, as follows:

> Generally, any description in a conveyance of the property is sufficient if it identifies the property, or if it affords the means of identification, as by extrinsic evidence.
> Courts are reluctant to declare instruments void for an uncertain description and will look to attendant facts to make them certain. The sufficiency of a description in a deed is not to be measured by any inflexible rule or sets of rules. While it has been held that the function of a description of the property in conveyances is to identify the land covered by the conveyance, it has also been stated that the office of a description is not to identify the land, but to afford a means of identification.
> Generally, therefore, any description is sufficient by which the identity of the premises can be established, or which

furnishes the means of identification, of the property covered by the deed or which it was intended to convey thereby with reasonable certainty, and without the exercise of arbitrary discretion. A conveyance is also good, if the description can be made certain within the terms of the instrument. A description from which a surveyor can locate the land and by means of which the surveyor is able to establish its boundaries, or by which a party familiar with the locality is enabled to identify the premises intended to be conveyed with reasonable certainty, is sufficient. A deed will not be held void for uncertainty of description if by any reasonable construction it can be made available. A court will declare a deed void for uncertainty of description only where, after resorting to oral proof or after relying upon other extrinsic or external proof or evidence, that which was intended by the instrument remains a mere matter of conjecture, or where the description cannot be made applicable to but one definite tract.

The description of property need not be determined by reference to the deed alone. Extrinsic facts pointed out in the description may be resorted to in order to ascertain the land conveyed, and the property may be identified by extrinsic evidence. Although such extrinsic evidence must be sufficient to establish the identity of the land sought to be conveyed, it must not add to, enlarge, or in any way change the description contained in the conveyance, and the writing itself must furnish the hinge or hook on which to hang the aid thus afforded, without resorting to any secret or undisclosed intention of the parties thereto.

If part of the description is proved inconsistent on being applied to the premises, it does not vitiate the deed if a sufficient part of the description remains for purposes of identification or where the grantor's intent is apparent. However, if the deed contains inconsistent descriptions either of which is sufficient to identify different parcels of property, and there is nothing to show the grantor's intention, the deed is void for uncertainty. Where all the particulars in a description are essential, the description in the deed must agree with every particular, or nothing will pass, but where they are not all essential, and it does not so agree, if it is sufficient to identify the estate granted, the deed is good.

*Id*.  (footnotes omitted).

Tennessee case law is in line with the <u>Corpus Juris Secundum</u> on this point—to be valid, a deed "must designate the land intended to be conveyed with reasonable certainty." ***Phoenix Mutual Life Insurance Co. v. Kingston Bank & Trust Co.***, 172 Tenn. 335, 112 S.W.2d 381, 382 (Tenn. 1938); ***Freeman v. Martin Robowash, Inc.***, 61 Tenn.App. 677, 457 S.W.2d 606, 609 ( Tenn. Ct. App. 1970); ***Sheffield v. Franklin***, 32 Tenn.App. 532, 222 S.W.2d 974, 978 ( Tenn. Ct. App. 1947). Several of our courts have held that "[t]he test is whether a surveyor with the deed before him [or her] and with or without the aid of extrinsic evidence can locate the land and establish the boundaries." ***Wallace v. McPherson***, 187 Tenn. 333, 340, 214 S.W.2d 50 (Tenn. 1947); ***Sheffield***, 222 S.W.2d at 979.

In determining when extrinsic evidence may be considered to locate the land, our courts have adopted the following standard from ***Dobson v. Litton***, 45 Tenn. 616 ( Tenn. 1868):

> Where an instrument is so drawn that, upon its face, it refers necessarily to some existing tract of land, and its terms can be applied to that one tract only, parol evidence may be employed to show where the tract so mentioned is located. But where the description employed, is one that must necessarily apply with equal exactness to any one of an indefinite number of tracts, parol evidence is not admissible to show that the parties intended to designate a particular tract by the description.

*Id*. at 620; ***Wilson v. Calhoun***, 157 Tenn. 667, 11 S.W.2d 906, 907 (1928); ***Bates v.  Dennis***, 203 S.W.2d 928, 931 (Tenn. Ct. App. 1946). The ***Wilson*** court further noted that:

> [I]t is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject-matter. The terms may be abstract and of a general nature, but they must be sufficient to fit and comprehend the property which is the subject of the transaction; so that with the assistance of external evidence, the description, without being contradicted or added to, can be connected with and applied to the very property intended, and to the exclusion of all other property.

*Wilson*, 11 S.W.2d at 908.  The ***Wilson*** court concluded that a description, which identified

the property as "the Redmond farm of 110 acres," and delineated the boundaries of the farm, was "exceptionally full and complete, with the single exception noted, namely, the omission of the name of the state and county." *Id*. at 907. The court, therefore, concluded that the description was sufficiently definite and exclusive to permit extrinsic evidence to supply the county and state where the farm was located. *Id*. at 908. In contrast, the *Dobson* court held that a description of "a certain tract of land, containing nine acres and sixty-six poles, near the junction of Broad Street, Nashville, and the Hillsboro Turnpike, Davidson County, Tennessee" was too vague and uncertain to be enforced and that parol proof was not admissible to remedy the defect. *Dobson*, 45 Tenn. at 618–19. The court noted that the description did not specify a particular tract of land and could apply to any tract in the vicinity containing the same number of acres, even if the grantor owned only one tract in the area. *Id*.

These standards have been upheld in cases such as *In re Gatlinburg Motel Enterprises, Ltd.*, 119 B.R. 955 (Bankr. E. D. Tenn. 1990). In that case, the property described in the deed of trust was "that certain leasehold interest in real property and leasehold improvements and other leasehold rights, title and interest (the 'Lease') as is more fully described in Exhibit 'A' attached hereto...." There was, however, no Exhibit "A" attached to the deed of trust. *Id*. at 959. After reviewing *Sheffield*, *Wilson*, and other Tennessee cases, the court held that the property description was insufficient because it contained no description whatsoever of any particular tract of land. *Id*. at 966. Quoting extensively from *Dobson*, the court further held that the grantee could not use extrinsic evidence (i.e., a prior deed of trust in favor of another entity) to supply the property description. *Id*. at 967.

In this case, the legal description contained in the First Deed of Trust specifically provides:

> Situated and lying in the County of Shelby, State of Tennessee:
>
> Lot 16 [sic], Rolling Woods Subdivision, as shown on plat of record in Plat Book 38, Page 8, in the Register's Office of Shelby County, Tennessee, to which plat reference is hereby made for a more particular description of said property.
>
> Being the same property conveyed to Charles Giacosa and wife, Pamela Giacosa, by Warranty Deed from Roland J. Holeczko and wife, Candice D. Holeczko, dated 05/21/2001 and recorded 06/25/2001 in Book LD, Page 1101, in the Register's Office for Shelby County, Tennessee.

In addition to the foregoing description, the Derivation Clause of the First Deed of Trust clearly indicates the correct street address of the Property (i.e., 8320 Bon Lin Drive, Bartlett, Tennessee 38133). Moreover, the Warranty Deed referred to in this description correctly identifies the Property as being Lot 10 rather than Lot 16. In its ruling from the bench, which is incorporated by reference into the February 25, 2011 order, the trial court stated, in relevant part, as follows:

> [W]hen the original warranty deed to the Giacosas w[as] prepared there was some conflicting information in the warranty deed. On the first page it referred to a Lot 16 but it also referred to the same property that w[as] owned by the former owners and on the second page it clarifies the property address by specifically stating the property address is 8320 Bon Lin Drive and the parcel number of the property.
>
> So even though the first page has the erroneous lot number, there is other information in this same document that clarifies the correct property parcel as being Lot 10 and being a specific parcel number and also being the same property referred to in the previous deed to the grantors of the property to the Giacosas.

The trial court's statements here are in line with the **Dobson** holding. Ostensibly, the trial court determined that the First Deed of Trust "is so drawn that, upon its face, it refers necessarily to some existing tract of land, and its terms can be applied to that one tract only. . . ." **Dobson**, 45 Tenn. at 620. Consequently, the description in the First Deed of Trust is "exceptionally full and complete, with the single exception noted, namely, the [scrivener's error listing the Property as Lot 16]." **Wilson** 11 S.W.2d at 907. Under the **Wilson** holding, and its progeny, the trial court correctly concluded that the description was sufficiently definite and exclusive to permit extrinsic evidence (i.e., the previously-filed warranty deed that is referenced in the description) to supply the correct lot number. **Id**. at 908.

From the totality of the circumstances, we agree with the trial court that the First Deed of Trust, in favor of ABN, sufficiently designated the land intended to be mortgaged "with reasonable certainty" as required under Tennessee law. *See, e.g.,* **Phoenix Mut. Life Ins. v. Kingston Bank & Trust**, 172 Tenn. 335, 112 S.W.2d 381, 382 (Tenn. 1938); **Freeman v. Martin Robowash, Inc.**, 457 S.W.2d 381, 382 (Tenn. Ct. App. 1970) (citing **Sheffield**, 222 S.W.2d at 978–79) ("[I]n determining the question of title, based upon the description of the property, the generally accepted rule is that if the instrument describes it in such a manner that it can be located and distinguished from other property, it is good[.]"); **Wallace v. McPherson**, 187 Tenn. 333, 340, 214 S.W. 50, 53 (Tenn. 1947) (holding that a mere street

-10-

address was sufficient to identify property).  The question, then, is whether the First Deed of Trust gives ABN the superior mortgage holder position.

It is well settled that a prior recorded deed of trust has preference over a subsequently recorded deed of trust, "unless the holder of the first-filed instrument had full notice of the pre-existing but later-filed instrument."  **Washington Mut. Bank v. ORNL Fed. Credit Union**, 300 S.W.3d 665, 668 (Tenn. Ct. App. 2008) (citing Tenn. Code Ann. §66-26-105). In this case, the notice exception is not applicable; consequently, the First Deed of Trust, in favor of ABN, has priority over the Second Deed of Trust in favor of Southern Security because the First Deed of Trust was recorded first.  Tenn. Code Ann. §66-26-105.[3]

Here, Southern Security argues that ABN should lose its priority status due to the erroneous lot identification contained in the First Deed of Trust.  Southern Security has provided this Court with no authority that directly addresses the effect of a scrivener's error on the priority of mortgages, and we have found no such cases in our own research.  That being said, we find our opinion, in **Holiday Hospitality Franchising v. State Res.**, 232 S.W.3d 41 (Tenn. Ct. App. 2006), perm. app. denied (Tenn. April 30, 2007), sufficiently analogous to provide some guidance on this question.  In **Holiday Hospitality**, this Court held that a subsequent judgment lien could not take priority over an erroneously released first mortgage.  Specifically, we reasoned that:

> The existence of an equitable lien in the creditor provides the foundation for a court to restore a released deed of trust to its priority position. Under Tennessee law, the mistaken release of a recorded deed of trust creates an equitable lien in favor of the creditor. **Jetton v. Nichols**, 8 Tenn. App. 567, 574 (Tenn. Ct. App. 1928) ("A lien discharged by mistake is, in contemplation of equity, still in existence."). An equitable lien is "the right to have the property subjected in a court of equity to the payment of the claim. It is a floating equity until action by the court is

---

[3] Tennessee Code Annotated Section 66-26-105 provides:

> Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

invoked." ***Osborne v. McCormack***, 180 Tenn. 526, 176 S.W.2d 824, 824–25 (Tenn. 1944). A court of equity will restore a lien where the parties intended that it should not be extinguished, so long as the intervening rights of third parties do not prevent the reinstatement. ***Needham v. Caldwell***, 25 Tenn. App. 189, 154 S.W.2d 535, 538 (Tenn. Ct. App. 1941); ***Hamilton Nat'l Bank of Chattanooga v. Duncan***, 23 Tenn. App. 329, 132 S.W.2d 353, 354 (Tenn. Ct. App. 1939); ***Jetton***, 8 Tenn. App. at 574.

\*        \*        \*

We rely upon the principles espoused in the case of ***Needham v. Caldwell***, 25 Tenn. App. 189, 154 S.W.2d 535 (Tenn. Ct. App. 1941), to support this result. In that case, a junior deed holder claimed priority over a senior deed holder on the basis of the first deed holder's inadvertent release of its trust deed. ***Needham***, 154 S.W.2d at 536. Importantly, though, the junior lienor had knowingly accepted a second mortgage and acknowledged its inferior position on its deed of trust. ***Id***. This Court restored the first deed holder's priority position, holding cancellation of a release to be appropriate when, contrary to the parties' intent, a deed of trust has been erroneously discharged, so long as the rights of third parties do not prevent the deed's reinstatement. ***Id***. at 538.

***Holiday Hospitality***, 232 S.W.3d at 52–53. (footnote omitted).

In the instant case, we have a "mistake" that is even less offensive than the premature and erroneous release of a superior lien. Here, we are dealing with a mere scrivener's error concerning the lot number. Moreover, as discussed in detail above, the same deed of trust clearly and correctly references the Property by address, by parcel, and by previous warranty deed. If the ultimate act of releasing a lien will not suffice to cancel a superior lienholder's priority, ***Holiday Hospitality***, 232 S.W.3d at 52, then we certainly cannot go so far as to hold that a scrivener's error will negate a lien position obtained under an otherwise "exceptionally full and complete" deed. ***Wilson***, 11 S.W.2d at 907.

Furthermore, there is no evidence in this record that any third parties were prejudiced by the scrivener's error. As mentioned above and as evidenced by the Affidavit of Jeri Keith, Southern Security undisputedly took its lien, and fully accepted its status, as *second* mortgage holder on the Property. It is well settled that "[n]o . . . claim to precedence can be set up by

-12-

a junior mortgagee whose lien was expressly made subject to the prior mortgage or who, at the time of taking the mortgage, had actual notice of the defects in the senior mortgage." 59 C.J.S. Mortgages § 264 (2011). Moreover, there is no dispute that the First Deed of Trust was filed in the Register's Office.

> Tennessee law recognizes inquiry notice as a form of actual notice. ***Blevins v. Johnson County***, 746 S.W.2d 678, 683 (Tenn.1988). Inquiry notice is "'knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to ultimate facts.'" ***Id***. (quoting ***Texas Co. v. Aycock***, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn.1950)). A good faith failure to seek out the ultimate facts constitutes no defense, and a party asserting this argument is still chargeable with the undiscovered facts so long as a reasonably diligent inquiry would have uncovered them. *See **id***.

***Holiday Hospitality***, 232 S.W.3d at 49. Here, Jeri Keith indicated that Southern Security's title search had, in fact, revealed the First Deed of Trust. From the totality of the circumstances, we conclude that Southern Security was, in fact, aware of the First Deed of Trust and was, therefore, aware of is subordinate lien position.

## Contract

Having determined that the First Deed of Trust was sufficient to secure ABN's position as the superior mortgage holder, the question is whether Southern Security was bound to honor the bid it gave at ABN's foreclosure sale. There is no dispute in this record that ABN followed the necessary advertising and notice requirements before holding the foreclosure sale. In ***Hawkins v. Spicer***, 101 S.W.2d 151, 153 (Tenn. Ct. App. 1936), this Court specifically held that a trustee's sale of mortgaged property was valid where the sale was properly advertised, there were several persons present when the sale was held, and the whole matter was handled fairly. Having followed all notice requirements, and having the first lienholder position, ABN's foreclosure sale was valid. Consequently, as the successful bidder at that sale, Southern Security was obligated to tender the purchase price to ABN. As discussed in 7A C.J.S. Auctions and Auctioneers §34 (2010), "[t]he acceptance of a bid at a public sale by the auctioneer conducting the sale generally gives rise to an executory contract of sale between the parties." Moreover, "[a] bid at an auction sale with reserve is only an offer for the property, while, at an auction without reserve (such as ABN's sale), it is the acceptance of the seller's offer to sell." ***Id***. at § 30. We, therefore, conclude that the trial court correctly found that Southern Security was contractually bound to pay the

$197,165.00 bid amount.

## **Damages**

In its final argument, Southern Security asserts that ABN had no damages in this case and that, consequently, it has no basis for recovery. We disagree. Clearly, ABN suffered damages when Southern Security stopped payment on its $197,165.00 cashier's check. As discussed above, once Southern Security placed its bid and it was accepted by ABN, Southern Security was contractually bound to pay the sum. In cancelling payment, Southern Security caused ABN to suffer $197,165.00 in damages. Neither party has raised a specific issue concerning the trial court's denial of interest on the $197,165.00; consequently, we will not address that question here.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant Southern Security Federal Credit Union, and its surety.

_____
J. STEVEN STAFFORD, JUDGE