IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 17, 2016 Session

## IN RE: DEVIN B.

**Direct Appeal from the Juvenile Court for Shelby County**
**No. X4036      Dan H. Michael, Judge**

---

**No. W2016-00121-COA-R3-JV – Filed August 25, 2016**

---

This is an appeal of an order dismissing Father's petition to enroll judgment in Tennessee and motion to modify a parenting plan due to a lack of subject matter jurisdiction. The juvenile court found that Tennessee was not the Child's home state, pursuant to the Uniform Child Custody Enforcement Act, on the day of the proceeding or within the six months prior to Father's filing his petition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Terrell Lee Tooten, Memphis, Tennessee, for the appellant, Tracey B.

Laurie Winstead Hall, Memphis, Tennessee, for the appellee, Chelsea L.

Autumn Blaise Chastain, Memphis, Tennessee, Guardian ad Litem.

## OPINION

### Background & Procedure

The parties, Tracey B. ("Father") and Chelsea L. ("Mother") are the parents of the child, Devin B. ("the Child"),[1] who was born on September 24, 2005 in Memphis, Tennessee, out of wedlock. Shortly after the Child was born, the parties moved to Texas

---

[1]In cases involving a minor child, it is this Court's policy to redact names in order to protect the child's identity. In this case, in order to preserve both clarity and the anonymity of the child, we will redact the names of individuals sharing the child's surname and will refer to those individuals by their given name and the first letter of their surname.

and lived together until they ended their romantic relationship. On March 1, 2010, a Texas court entered an order adopting a permanent parenting plan and setting child support.

On August 26, 2011, Father filed a petition to enroll the Texas judgment in juvenile court in Memphis, Tennessee, alleging that the Child had lived "the majority of the time" in Tennessee for six months preceding the petition. That same day, Father also filed a petition for emergency relief and to modify the parties' parenting schedule. After a hearing, the juvenile court magistrate entered an order on May 30, 2012, enrolling the Texas judgment in Tennessee, setting visitation, and naming Father primary custodian of the Child. The order made no findings with reference to the Uniform Child Custody Jurisdiction Enforcement Act[2] ("UCCJEA") or whether Tennessee was the Child's home state for purposes of the UCCJEA.[3]

Father then filed a petition to set child support on March 24, 2014. On June 19, 2014, Mother filed a motion to modify custody or, in the alternative, to modify visitation, in the juvenile court in Memphis. In her petition, Mother asserted that a modification was warranted based on a change of circumstances, specifically alleging that Father refused to allow Mother to visit or communicate with the Child. In the following months, the parties filed a flurry of motions with the court and against one another, none of which are relevant to this appeal. On November 25, 2014, the juvenile court entered an order

---

[2]The UCCJEA is codified at Tennessee Code Annotated sections 36-6-201, et seq., and "governs jurisdiction between Tennessee and other states over child custody proceedings." *Blake v. Blake*, No. M2014-01016-COA-R3-CV, 2015 WL 1510663 at *3 (Tenn. Ct. App. Mar. 30, 2015). The stated purposes of the UCCJEA are to:

> (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in shifting of children from state to state with harmful effects on their well-being;
> (2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
> (3) Discourage the use of the interstate system for continuing controversies over child custody;
> (4) Deter the abductions of children;
> (5) Avoid relitigation of custody decisions of other states in this state; and
> (6) Facilitate the enforcement of custody decrees of other states.

Tenn. Code Ann. § 36-6-202.

[3]"'Home state' means the state in which a child lived with a parent or a person acting as a parent for a least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, 'home state' means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." Tenn. Code Ann. § 36-6-205(7).

appointing a Guardian ad Litem, finding it necessary to obtain additional information with respect to the parties' relationship with the Child and to minimize the litigation's harm to the Child.

The magistrate heard testimony from the parties on April 24, 2015. During the hearing, the magistrate was made aware of documents dated September 26, 2011, October 3, 2011 and October 31, 2011, after Father's petition to enroll judgment in Tennessee, and signed by either Father or the Child's governess, Billie Johnson, or both, stating the Child resided in Houston, Texas. When pressed for an explanation of why Father would file a petition to enroll judgment in Tennessee in August 2011, stating that the Child lived in Memphis and then sign documents stating the Child lived in Texas a month later, Father's counsel suggested it was a matter of confusion over domicile and temporary residence.

However, the magistrate was then directed to an e-mail Father sent to Mother dated August 18, 2011, in which Father stated his then-current address was in Texas. On examination by the magistrate, Father confirmed the accuracy of the e-mail, which then prompted the following exchange:

THE COURT: August 2011, the child lived [in Memphis]? Remember, you're under oath.
THE WITNESS: Yeah, I know that.
THE COURT: Okay. Is the answer yes?
THE WITNESS: I haven't given you my answer yet. Give me a minute. Yeah, I'm going to give you the truth. You're saying –
THE COURT: In August, did he live in Memphis?
THE WITNESS: Yes, he was in Memphis.
THE COURT: Did he live in Memphis?
THE WITNESS: Yes, he lived in – we were back and forth.
THE COURT: In July, did he live in Memphis?
THE WITNESS: We were living in Memphis in July, going back and forth.
THE COURT: In June, did he live in Memphis?
THE WITNESS: We were in Memphis, going back and forth.
THE COURT: In May, was he living in Memphis?
THE WITNESS: I do not recall that because that was during the transition of getting employed, employment.
. . .
THE COURT: April, did he live in Memphis?
THE WITNESS: No, sir, he did not.
THE COURT: Okay. I don't – we don't have jurisdiction.

3

Because the Child did not live in Tennessee for six months preceding Father's petition, the magistrate determined that the juvenile court did not have subject matter jurisdiction and that the child's home state was Texas. The magistrate then issued his findings and recommendations on June 22, 2015,[4] finding that Father fraudulently obtained from the juvenile court a prior order granting him custody of the Child, that all pending matters in the case should be dismissed for lack of subject matter jurisdiction, and that all prior orders entered by the juvenile court in the matter should be set aside as void. The magistrate also assessed against Father Mother's attorney's fees and expenses as well as the entirety of the Guardian ad Litem's fees. The magistrate's findings were subsequently confirmed as the order of the juvenile court.

Father moved for a rehearing of his petition before a juvenile court judge.[5] The rehearing took place on November 16, 2015 before a special judge.[6] On November 30, 2015, the special judge entered an order declaring the juvenile court's prior order of May 30, 2012 void, denying Father's petition to enroll the Texas judgment in Tennessee, and confirming the magistrate's June 22, 2015 order as the decree of the juvenile court. Specifically, the special judge found that "at the hearing on April 24, 2015, the father failed to prove" that Tennessee was the Child's home state and that "the exhibits entered in the record are more than adequate to support the magistrate's finding that this Court lacks subject matter jurisdiction to register the Texas decree." Father appealed the juvenile court's order.

## Issues

Father presents two issues for review on appeal:

I.      Whether the trial court erred when it determined that Tennessee did not have subject matter jurisdiction.

II.     Whether any party can pursue any fees against Father based upon the order entered on June 18, 2015.

---

[4] The order is signed June 18, 2015, but filed June 22, 2015. For the sake of clarity, we will use June 22, 2015 throughout.

[5] Both Tennessee Code Annotated section 37-1-107(e) and Tennessee Rule of Juvenile Procedure 4(c)(1) permit any party to request a hearing before a juvenile court judge of certain matters heard by a magistrate.

[6] The record is wholly devoid of any valid order appointing the special judge. As often seems to be the case with the Shelby County Juvenile Court, the special judge apparently appointed himself. The order on the rehearing includes the boilerplate language "The Judge finds it necessary to be absent from holding Court, and . . . appoints as substitute judge . . ." and is signed by the special judge rather than the juvenile judge.

4

Additionally, this Court raised the following two issues *sua sponte*:

I.      Whether the special judge was validly appointed to hear the matter that is now currently on appeal.

II.     If the special judge was not validly appointed to hear the matter that is now currently on appeal, what effect would that have on the finality and the validity of the judgment appealed.

## Standard of Review

In nonjury cases, this Court's review is *de novo* upon the record of the proceedings in the trial court, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel,* 919 S.W.2d 26, 35 (Tenn. 1996).

## Analysis

### I.

Prior to oral argument, this Court *sua sponte* directed the parties to file supplemental briefs to set forth the basis on which the special judge exercised his authority over this case. Only Father filed a supplemental brief.

While the final order signed by the special judge in this case references Tennessee Code Annotated section 17-2-122(b),[7] the statute providing judges with the authority to appoint special judges, the record contains no such appointment. As both this Court and

---

[7]Tennessee Code Annotated section 17-2-122 states that

(a) Notwithstanding the provisions of § 16-15-209 or § 17-2-109 or any other relevant provision to the contrary, a judge shall have the authority to appoint a special judge as provided in this section.

(b) Sections 16-15-209 and 17-2-109 and any other relevant provision shall not apply where a judge finds it necessary to be absent from holding court and appoints as a substitute judge an officer of the judicial system under the judge's supervision whose duty it is to perform judicial functions, such as a juvenile magistrate, a child support magistrate or clerk and master, who is a licensed attorney in good standing with the Tennessee supreme court. The judicial officer shall only serve as special judge in matters related to their duties as judicial officer.

the Tennessee Supreme Court have noted, in *In re M.A.P.*, No. W2008-01352-COA-R3-PT, 2009 WL 2003357 (Tenn. Ct. App. July 10, 2009) and its progeny, and *Ferrell v. Cigna Property & Cas. Ins. Co*, 33 S.W.3d 731, 739 (Tenn. 2000), respectively, failure to properly appoint a special judge is procedural error.  Despite a strongly worded dissent from Judge Stafford, this Court, in *In re M.A.P.*, determined that, "even if the proper procedures are not followed under the statute, the special judge's decision will be binding on the parties if he is acting as a de facto judge, *i.e.*, in good faith under color of right." *In Re: M.A.P.*, 2009 WL 2008357, at *13 n.11 (citations omitted).  Relying on *In re M.A.P.*, Father notes that the special judge's "authority was not challenged by any of the parties, and there is nothing in the record indicating that [the special judge] operated in bad faith, and therefore, [the special judge] acted as de facto judge, and the appeal is properly before this [c]ourt."  Despite this Court's criticism of the Juvenile Court's method of appointing special judges in 2009 in *In re M.A.P.*, the practice appears to have endured.  However, given Father's acquiescence to the practice and the outcome discussed herein, we proceed to address the issues raised by Appellant on appeal.

II.

Father's first assignment of error concerns whether the trial court erred when it determined that Tennessee did not have subject matter jurisdiction over the child custody issues in this case.  Having reviewed the record and the juvenile court's conclusions of law, we now conclude that the juvenile court did not err in finding that Tennessee does not have subject matter jurisdiction in this case.

Father first argues that because subject matter jurisdiction was not challenged after the juvenile court magistrate's May 30, 2012 order, the issue is now waived.  While personal jurisdiction and venue, among others, can be waived, "[s]ubject matter jurisdiction, on the other hand, cannot be waived, because it is the basis for the court's authority to act."  *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996).  As noted by the juvenile court magistrate in the April 24, 2015 hearing, "As we [] lawyers know, subject matter jurisdiction either exist[s] [or] does not exist.  It can't be waived, it can't be conferred by the parties."

Next, Father argues in his brief that the juvenile court magistrate "had no authority to set aside prior orders not before him, after they were entered, and not appealed, after being decided based off the same evidence in [sic] he interpreted differently."  Father's perplexing argument apparently relies on the case of *Cumberland Bank v. Smith*, 43 S.W.3d 908 (Tenn. Ct. App. 2000).  In his brief, Father cites *Cumberland*: "[A] judgment is not subject to collateral attack for mere errors or irregularities committed by the court in the exercise of its jurisdiction."  *Id.* at 910.  However, the very next sentence of *Cumberland* reads "'Errors *other than lack of jurisdiction* render the judgment merely

6

voidable . . . .'" *Id.* (*quoting Cook v. Cameron*, 733 S.W.2d 140 (Tex. 1987)) (emphasis added). Father's argument that the juvenile court magistrate acted improperly in addressing subject matter jurisdiction is wholly devoid of merit.

Next, Father argues that he met his burden of proof to show that Tennessee had subject matter jurisdiction. In support of his argument, Father misquotes the juvenile court special judge's November 30, 2015 order. In his brief, Father characterizes the order as stating: "Specifically, the father was to show that the child *lived* in Tennessee at the time of the proceeding, 'or,' 6 months prior to the filing of the father's initial petition." Based on that characterization, Father contends that "whether [the Child] lived in Tennessee on the day of the proceeding on April 24, 2015, that [sic] was uncontested fact by all parties." However, the actual order employs the statutorily defined term "home state" rather than "lived." Whether or not Father realizes it, the Child's "home state" for purposes of the UCCJEA and where the Child physically resided on the day the action commenced are legally distinct concepts. The proof in the record is abundantly clear; Tennessee was not the Child's home state on the day of the proceeding or within the six months prior to Father's initial petition. Accordingly, we conclude that the juvenile court did not err in finding that Tennessee does not have subject matter jurisdiction in this case.

Lastly, counsel for Father, at oral argument, argued that Father was effectively denied due process by the special judge's decision to not hear additional evidence during the re-hearing. Father did not properly raise this as an issue on appeal. In his brief, Father devotes two sentences, without supporting case citation, to due process near the end of his argument that the court reached the incorrect legal conclusion with respect to subject matter jurisdiction. "'Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.'" *Bunch v. Bunch*, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008) (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)). Furthermore,

> [i]t is not the role of this Court to analyze every ruling by the trial court on remand just in case the appellant intended to challenge it on appeal. "[J]udges are not like pigs, hunting for truffles" that may be buried in the record, *Flowers v. Bd. of Professional Responsibility*, 314 S.W.3d 882, 899 n.35 (Tenn. 2010) (citation omitted), or, for that matter, in the parties' briefs on appeal.

*Cartwright v. Jackson Capital Partners, L.P.*, 478 S.W.3d 596, 615-16 (Tenn. Ct. App. 2015) (citing *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *9 (Tenn. Ct. App. Feb. 4, 2015)). Finally, our supreme court has clearly stated that

"an issue may be deemed waived when it is argued in the brief but it is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (citing *ABN AMRO Mortg. Grp., Inc. v. S. Sec. Fed. Credit Union*, 372 S.W.3d 121, 132 (Tenn. Ct. App. 2011); *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002)). Here, Father failed to raise this issue in his Statement of Issues Presented for Review and instead buried a two sentence reference to the issue within his appellate brief. Accordingly, we must conclude that Father waived any issues related to due process.

III.

Father's second assignment of error concerns whether any party can pursue any fees against the Father based on the order entered by the juvenile court special judge on June 22, 2015. Put simply, Father argues that Tennessee Rule of Juvenile Procedure 4(c)(1) entitled him to a *de novo* review on re-hearing and that the juvenile court special judge heard no argument or testimony on either the fraud or fees issues and, therefore, could not and did not include them in his order. For her part, Mother offers no argument on this issue and conceded at oral argument that the order being appealed did not provide for fees.

The record in this case indicates that the special judge conducted his review of the magistrate's decision *de novo* on the record after hearing argument from counsel. The re-hearing was not a full evidentiary hearing. In fact, the special judge heard no testimony from either of the parties in this matter. Further, the record reflects that there was no argument regarding the issues of fraud or attorney's and guardian ad litem fees. The special judge similarly made no findings with respect to whether Father committed fraud or whether Father should pay Mother's or the guardian ad litem's fees. When asked during the hearing whether the forthcoming order would include the issue of the guardian ad litem's past fees, the special judge stated, "No. Since I didn't have any argument on that."

The final order appealed in this case is the order of the juvenile court filed by the special judge after Father's requested re-hearing. Father's decision to appeal this issue apparently stems from a statement in the final order confirming "the magistrate's order of June 18, 2015 . . . as the decree of this Court." However, the final order does not include findings or conclusions with respect to the issues of fraud or fees. Furthermore, our review of the transcript demonstrates the special judge's clear intent to not make a ruling with respect to the fraud issue or to fees. Accordingly, we conclude that there has been no finding of fraud and that Father has not been ordered to pay fees.

## Conclusion

For the foregoing reasons, the judgment of the juvenile court is affirmed. Costs of this appeal are taxed to the Appellant, Tracey B., and his surety, for which execution may issue if necessary.

_____

BRANDON O. GIBSON, JUDGE

9