# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 17, 2012 Session Heard in Memphis

## TERESA ANN BARRETT GOODMAN v. JEFFERY WAYNE GOODMAN

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-000283-08, Div IX.     Robert L. Childers, Judge

---

### No. W2011-01971-COA-R3-CV - Filed May 7, 2012

---

This divorce case deals primarily with child support. The parties entered into a consent order on the amount of child support to be paid. Father subsequently lost his job and sought modification of his obligation. The divorce referee modified the support based on Father's alleged earning capacity rather than on his actual income. Father appealed the ruling of the referee, but did not file a transcript of the hearing with the trial court. The trial court entered a final decree of divorce, finding all property to be marital, affirming the ruling of the referee, setting permanent child support based on Father's alleged earning capacity, and awarding attorney fees to Mother. We reverse the judgment setting child support based on Father's earning capacity and remand for a determination of Father's child support based on his actual income. Additionally, we vacate the judgment of the trial court awarding Mother $35,000.00 in attorney fees, award Mother $7,675.00 in attorney fees and remand to the trial court for reconsideration of the remaining portion of the attorney fees in light of this opinion. This case is affirmed in all other respects.  Reversed in part, vacated in part, affirmed in part, and remanded.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed in Part; Vacated in Part; Affirmed in Part; and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

David E. Caywood and Joshua A. Wallis, Memphis, Tennessee, for the appellant, Jeffery Wayne Goodman.

J. Steven Anderson, Memphis, Tennessee, for the appellee, Teresa Ann Barrett Goodman.

## OPINION

# I. Background

On January 18, 2008, Plaintiff/Appellee Teresa Ann Barrett Goodman ("Mother") filed a complaint for divorce against Defendant/Appellant Jeffery Wayne Goodman ("Father"). At the time of the complaint, the parties had been married for approximately 15 years, and had four minor children, ranging in age from thirteen (13) to nine (9).

During the parties' marriage, Father was a licensed real estate broker working as an independent contractor for Prudential Collins-Maury. However, shortly before the complaint for divorce was filed, Father took another job at America's Home Place, ostensibly because the job offered a guaranteed salary of $75,000.00 per year, as opposed to commissions.

On February 20, 2008, Mother filed a motion, *pendente lite*, seeking alimony, child support and attorney fees. The parties subsequently entered into a consent order on temporary support, wherein Father agreed to pay $1,747 per month in child support retroactive to February 20, 2008; this amount was based on Father's projected income of $75,000.00 per year from America's Home Place.

In June 2008, Father was fired from his job at America's Home Place. According to Father, his employment was terminated for criticizing a supervisor, who was allegedly stealing leads from other brokers. For some time, Father was unemployed, but he eventually found work by returning to his previous employment at Prudential Collins-Maury. Upon his return to Prudential Collins-Maury, Father was earning approximately $2,000.00 per month, plus a bonus for selling or renting a home. However, Father asserted that he was unable to pay the required child support due to the substantial decrease in his earnings.

On July 28, 2008, Mother filed a petition for *scire facias*, and Father was ordered to pay child a support arrearage of $8,652.00, as well as $750.00 for Mother's attorney fees. Father was also jailed pending a purge payment to the Court, which payment was made and Father was released.

Mother again asserted that Father refused to pay child support and filed another petition for *scire facias on* March 9, 2009. After a hearing, the trial court entered an order on May 22, 2009, requiring Father to pay a child support arrearage of $13,910.00, which included the previous judgment, as well as an award of $2,500.00 in attorney fees to Mother.

On June 22, 2009, Father filed a petition to modify his temporary child support obligation, citing his decreased income due to losing his employment with America's Home Store. The divorce referee held a hearing on the motion on May 6, 2010, finding that Father's income was $50,000.00 per year and ordering him to pay child support in the amount of

$1,427.00 per month, retroactive to June 22, 2009. The divorce referee also required Father to pay Mother $1,000.00 in attorney fees.[1]  Father filed his notice of appeal of the divorce referee's ruling on May 12, 2010. The trial court entered an order memorializing the divorce referee's findings on June 7, 2010.

According to Mother, Father failed to pay any child support and only partially paid the arrearage and attorney fee judgments. Accordingly, on March 11, 2010, Mother filed a third petition for *scire facias*. On June 18, 2010, the trial court entered an order on Mother's third petition for *scire facias*, ordering Father to pay a child support arrearage of $22,045.00, as well as $4,725.00 for Mother's attorney fees. In addition, Father was again incarcerated pending a purge payment of $7,500.00. The parties agreed to reduce the purge payment to $5,000.00, which was paid by Father's mother and Father was released from jail.

However, due to his incarceration, Father was terminated from his employment at Prudential Collins-Maury on June 25, 2010. According to Mother, the owner of Prudential Collins-Maury offered to allow Father to continue as an independent contractor with the company, but Father asserted that not only did he need a job that furnished insurance, he was unable to pay his broker's licence fee, which prevented him from returning to his previous employment.

During Father's time at Prudential Collins-Maury, he also began working at Starbucks, earning $7.35 per hour. After he was terminated from Prudential Collins-Maury he began working with Starbucks an average of 38–40 hours per week, eventually earning $8.95 an hour. Father has been promoted and has been trained to become a store manager. Although his employment at Starbucks allowed him to maintain insurance on the children, Father asserted that he was unable to maintain his child support payments due to the substantial loss in income.

A trial was held on the divorce complaint on July 6, 2011. Prior to trial, the parties had agreed on most issues regarding the parenting plan, except for the amount of child support and arrearage. Mother first testified as to the children's various medical expenses and the other expenses involved with raising the parties' four children. Mother also testified that all property accumulated during the marriage was marital property and that any property given to the parties by Father's parents was a gift, rather than a loan to the couple.

Father testified regarding his income and submitted his own proposed parenting plan. Father's plan stated his gross income at Starbucks to be $1,568.10 per month and proposed that his child support obligation based on his and Mother's relative income would be $18.00

---

[1] No transcript of the hearing before the divorce referee is contained in the record.

per month. Father testified regarding his income from 2006 to the time of trial. In 2006, he testified that his income was considerably less than the amount cited by Mother. To support his position, Father introduced his 2006 tax return, which stated that Father's total income was $82,246.00. However, Father pointed out that, at that time, he was an independent contractor, and had incurred business expenses in the amount of $49,080.00.[2] Accordingly, Father argued that his actual income for 2006 was $33,166.00. Father further testified, and introduced testimony from his former employer at Prudential Collins-Maury, indicating that, after the 2008 economic down-turn, the new-housing market became depressed such that Father was unable to make the same amount of money he had previously earned. To further support his argument, Father introduced tax documents showing his previous years' earnings, which were:

> 2008: $22,605.00[3]
> 2009: $24,500.00
> 2010: $17,706.50

Based upon these earnings, Father argued that the $50,000.00 in income imputed to him by the divorce referee was not supported by the evidence. Mother argued, however, that Father had been offered a job as an independent contractor with Prudential Collins-Maury (even after his employment was terminated), and that his 2006 tax return showed that Father could earn substantially more with Prudential Collins-Maury than he could at Starbucks.

Father also testified that a considerable portion of the furniture and antiques in the marital home had been loaned to the parties when Father's parents moved to a smaller home. Father's father also testified, stating that it was understood that the furnishings were merely on loan to the parties and that the furnishings were not a gift to the marital estate.

The trial court entered a final decree of divorce on August 18, 2011, based on the stipulated ground of Father's inappropriate marital conduct. The Court found that there was no separate property, only separate debt. The items that Father argued were his separate property were allocated to Father. In addition, all of Mother's retirement accounts were awarded to her, while Father's retirement accounts, which were substantially less, were awarded to him. The trial court determined that debts in the amounts of $36,186.10 and $5,000.00, as well as Father's attorney fees in the amount of $40,945.47, were Father's

---

[2] Mother argued that many of these expenses were exaggerated.

[3] Father's gross income for 2008 was $26,452.00. His reported income includes a deduction of $3,847.00 for business loss.

separate property. The trial court found that Father's "earning capacity" is $50,000.00 per year (without making a specific finding that Father was voluntarily underemployed) and ordered a permanent parenting plan be filed. The trial court also affirmed the ruling of the divorce referee and found that Father had a total child support arrearage of $32,225.00. Finally, the trial court ordered Father to pay $35,000.00 to Mother in attorney fees. Father timely appealed.[4]

## II. Issues Presented

Father raises the following issues, which we restate:

1. Whether the trial court erred by finding Father's earning capacity to be $50,000.00 per year despite the trial court's failure to find that Father was willfully and voluntarily underemployed?
2. Whether the trial court erred in granting Mother back child support in the amount of $32,225.00 based on Father's earning capacity of $50,000.00.
3. Whether the trial court erred in awarding Mother attorney fees in the amount of $35,000.00?
4. Whether the trial court erred in classifying certain furniture as marital property?

In the posture of Appellee, Mother raises the following issue for review:

1. Whether Father should be ordered to pay Mother's attorney fees incurred in defense of this appeal?

## III. Analysis

## A. Child Support

Father first argues that the trial court erred in finding that Father's earning capacity is $50,000.00 for purposes of child support. Tennessee Code Annotated Section

---

[4] The record on appeal was filed with the clerk of this court on December 13, 2011. Upon review of the record, this court determined that the order appealed did not appear to be a final judgment. Accordingly, on December 15, 2011, this Court ordered Father to obtain a final judgment in the trial court within ten days or show cause why this appeal should not be dismissed. Father obtained a final order and timely supplemented the record on appeal. It now appearing that the order appealed is final, this Court has jurisdiction to consider this appeal.

36-5-101(e)(1)(A) instructs the trial court to apply the child support guidelines, as set forth in the rules and regulations of the Department of Human Services, as a rebuttable presumption in determining the amount of child support. *See* Tenn. Comp. R. & Reg. § 1240-2-4-.01 (2008). Even with the adoption of the 2005 child support guidelines, trial courts retain a certain amount of discretion in their decisions regarding child support, which decisions we review under an abuse of discretion standard. **Richardson v. Spanos**, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. **Eldridge v. Eldridge**, 42 S.W.3d 82, 85 (Tenn. 2001).

It is undisputed that Father's actual income, at the time of the trial, was not $50,000.00 per year. Rather, the evidence showed that Father's actual income, at the time of trial, was approximately $19,000.00 per year, with potential to make $42,000.00 when he is promoted to a manager position at Starbucks. In contrast, the trial court determined that Father's income for purposes of child support was $50,000.00 per year, based on Father's alleged earning capacity. Because the trial court did not rely on Father's actual income, we can only surmise that the trial court imputed the $50,000 income, as is permitted under the Child Support Guidelines in certain limited circumstances. As is relevant to the instant appeal, the Guidelines provide that: "[i]mputing additional gross income to a parent is appropriate . . . [i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i). However, to trigger this portion of the child support guidelines and "[t]o calculate a child support award based on earning capacity rather than actual net income, *there must be a threshold finding that the obligor parent is willfully and voluntarily underemployed or unemployed.*" **Marcus v. Marcus**, No. 02A01-9611-CV-00286, 1998 WL 29645, at *3 (Tenn. Ct. App. January 28, 1998) (emphasis added); *see also* **Kendle v. Kendle**, No. M2010–00757–COA–R3CV, 2011 WL 1642503, at *3 (Tenn. Ct. App. April 28, 2011) (citing Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i)(I)). In this case, the final order contains no such finding.

Mother argues that this Court can infer that the trial court found that Father was willfully and voluntarily underemployed. However, the Child Support Guidelines make clear that imputing income to a parent is only appropriate after "a tribunal" determines that the parent is willfully and/or voluntarily underemployed. In addition, the court must make a specific finding that the parent is willfully and/or voluntarily underemployed, as the Child Support Guidelines "do not presume that any parent is willfully and/or voluntarily under or unemployed." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii).

The determination of whether a parent is voluntarily underemployed is a question of

fact, which "requires careful consideration of all the attendant circumstances." ***Richardson v. Spanos***, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005) (citing ***Eldridge***, 137 S.W.3d at 21 (Tenn. Ct. App. 2002); ***Willis v. Willis***, 62 S.W.3d 735, 738–39 (Tenn. Ct. App. 2001)). Such a determination "may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii)(I). As this Court has stated:

> When called upon to determine whether a parent is willfully and voluntarily unemployed or underemployed, the courts will consider the factors in Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(d)(2), as well as the reasons for the party's change in employment. ***Demers v. Demers***, 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003); ***Eldridge v. Eldridge***, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002). If a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed. ***Willis v. Willis***, 62 S.W.3d at 738. The courts are particularly interested in whether a parent's change in employment [or amount of income] is voluntary or involuntary, ***Eldridge v. Eldridge***, 137 S.W.3d at 21, and are more inclined to find willful and voluntary underemployment when a decision to accept a lower paying job is voluntary. ***Demers v. Demers***, 149 S.W.3d at 69.

***Richardson***, 189 S.W.3d at 726. Accordingly, the touchstones for this inquiry are the reasonableness of the employment decision, and whether the choice to take a lower paying job was voluntary. This Court explained:

> Our courts will consider the reasonableness of the obligor parent's occupational choices in light of surrounding circumstances. *See* ***Narus v. Narus***, No. 03A01-9804-CV-00126, 1998 WL 959839 at * 2 (Tenn. App. Ct. Dec. 31, 1998) (no Tenn. R. App. P. 11 application filed) (obligor not willfully and voluntarily unemployed or underemployed where obligor chose "to retire at a reasonable age, for legitimate reasons, and otherwise under reasonable circumstances."). The trial court must consider whether the choice to take a lower paying job is made in good faith and whether some or all of the unrealized earning capacity should be included as imputed income.

*   *   *

> Generally, where a reduced actual income is involved, the fact
> patterns differ on whether the leaving of previous employment
> or other income producing activity was voluntary, . . .

**Ralston v. Ralston**, No. 01A01-9804-CV-00222, 1999 WL 562719, at *3 (Tenn. Ct. App. Aug. 3, 1999).

In this case, however, the trial court made no finding as to whether Father's decision to leave the real estate industry was voluntary or whether his decision to take a job at Starbucks was reasonable. In fact, the trial court failed to even make a finding that Father was willfully and/or voluntarily underemployed. Without such a finding, the trial court's decision to impute income to Father was error. This question was previously presented to this Court in **Marcus v. Marcus**, No. 02A01-9611-CV-00286, 1998 WL 29645 (Tenn. Ct. App. Jan. 28, 1998), wherein the trial court likewise imputed income to the obligor father without making a specific finding that the father was willfully or voluntarily underemployed. This Court noted that "[n]othing in the record indicates that the trial court determined that [the father] was 'willfully and voluntarily' underemployed" and reversed the judgment basing the father's child support obligation on the father's alleged earning capacity. **Id.** at*3. The **Marcus** Court then remanded to the trial court for a determination of the father's child support obligation based on the father's actual income. Because the trial court in this case failed to make any finding that Father was willfully or voluntarily underemployed, we likewise reverse the judgment of the trial court basing Father's child support obligation on his alleged earning capacity and remand for a determination of Father's child support obligation based on his actual income.[5]

---

[5] We note that Mother argues on appeal that the trial court was required to impute income to Father because Father lost his job at Prudential Collins-Maury due to his incarceration. Indeed, the Child Support Guidelines state that:

> Criminal activity and/or incarceration shall not provide grounds for
> reduction of any child support obligation. Therefore, criminal activity
> and/or incarceration shall result in a finding of voluntary underemployment
> or unemployment under this section, and child support shall be awarded
> based upon this finding of voluntary underemployment or unemployment.

Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(a)(2)(ii)(I) (2008); *see also* **State ex rel. Laxton v. Biggerstaff**, No. E2009-01707-COA-R3-JV, 2010 WL 759842, at *5 (Tenn. Ct. App. March 5, 2010) (discussing this provision). After a thorough review of the record in this case, however, we conclude that this issue was not raised in the trial court. No where in the transcript of the hearing before the trial court, or otherwise in the

(continued...)

-8-

## B. Child Support Arrearage

Father next argues that the trial court erred in requiring Father to pay $32,225.00 in back child support based on the $50,000.00 per year income found by the divorce referee. Father bases this argument on his assertion that the divorce referee also failed to find that Father was willfully and/or voluntarily underemployed and that the $50,000.00 in income imputed to him is not based on the evidence.

Father timely appealed the divorce referee's ruling to the trial court on May 12, 2010. However, the trial court did not rule on the appeal until the final decree of divorce was entered on August 18, 2011. Father argues that the trial court erred in affirming the divorce referee's findings and, consequently, that his child support should be modified retroactively to the date of the filing of the petition to modify, i.e., June 22, 2009.

Appeals from rulings by divorce referees in Shelby County are governed by Local Rule 13(C) of 30th District Circuit Court of Tennessee, which provides, in pertinent part:

> The finding of the Divorce Referee will become final unless an appeal from said finding is made within (10) days as provided by these rules. Appeals from the Divorce Referee's ruling must be made by written motion within ten (10) days of the Referee's written ruling, and must be placed on the Friday 10:00 a.m. Docket in the Division to which the case is assigned, or specially set by fiat. The motion shall specifically set forth what the movant seeks and specifically how the Divorce Referee was in error. Appeals will be heard based on the record of the proceedings before the Divorce Referee. There will be no additional proof introduced unless otherwise directed by the

---

[5](...continued)
record on appeal, does Mother cite the above law or assert that the trial court must find Father willfully and/or voluntarily underemployed simply because he lost his previous employment due to incarceration. It is well-settled that issues are considered waived on appeal by the failure to present them at trial. *See ABN AMRO Mortg. Group, Inc. v. Southern Sec. Federal Credit Union*, No. W2011-00693-COA-R3CV, 2011 WL 5590320, at *4 (Tenn. Ct. App. Nov. 17, 2011) (citing *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009)); *see also State v. Leach*, 148 S.W.3d 42, 55 (Tenn. 2003) (noting that it is well-settled that "a party may not litigate an issue on one ground, abandon that ground post-trial, and assert a new basis or ground on appeal"). Accordingly, we decline to address this argument.

Court. The Divorce Referee's written ruling will be in effect and enforceable pending any hearing on the appeal.

*Id*. In this case, there is no indication that Father filed the record of the proceeding before the divorce referee with the trial court, nor is the record or the transcript of the hearing before the divorce referee included in the record before this Court. Local rule 13(C) provides that review of a divorce referee's ruling must be made on the record of the prior proceeding, unless otherwise authorized by the trial court.[6] Further, the burden is on the appellant to provide a record of the prior proceedings that will allow for meaningful review in this Court. Tenn. R. App. P. 24(b). This burden means that the appellant must prepare a record that "conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal." *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997) (quoting *State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992)). Without a proper record, appellate courts must affirm the trial court's decision and assume that "there was sufficient evidence before the trial court to support its judgment." *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (citing *McKinney v. Educator & Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977)). Accordingly, "[i]n the absence of [here, the record from the divorce referee hearing], this Court presumes that sufficient evidence existed to support the trial court's decision" to affirm the divorce referee's ruling. *Wangerin v. Wangerin*, No. M2010–00628–COA–R3–CV, 2011 WL 3820692, at *6 (Tenn. Ct. App. Aug. 26, 2011) (citing *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988)). Father's child support arrearage in the amount of $32,225.00 is affirmed.

### C. Attorney Fees in the Trial Court

Father next argues that the trial court erred in awarding Mother $35,000.00 in attorney fees, arising from her efforts to enforce the child support order. The decision to award attorney fees and the amount of fees awarded are matters resting within the sound discretion of the trial court. *Melvin v. Johnson-Melvin*, No. M2004–02106–COA–R3–CV, 2006 WL 1132042, at *9 (Tenn. Ct. App. Apr. 27, 2006). Accordingly, we will only reverse based on an abuse of discretion. *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001). Under the abuse of discretion standard, the trial court's decision "will be

---

[6] Nothing in the record persuades this Court that the trial court authorized additional evidence to be taken with regard to the divorce referee's ruling. In fact, during the trial, when Father attempted to argue that the court should modify the arrearage, the trial court stated "I am not going to re-try a divorce referee's hearing. You can submit the record to me, and I will look at the record from the . . . hearing, and I will make a decision based on that." However, there is no indication in the appellate record that the transcript of the hearing was ever filed.

upheld so long as reasonable minds can disagree as to the propriety of the decision made." *Camp v. Camp*, No. W2010-01037,COA-R3-CV, 2011 WL 2567542, at *5 (Tenn. Ct. App. June 29, 2011) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

Tennessee Code Annotated Section 36-5-103(c) addresses the award of attorney's fees in child support matters and provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

*Id.* Our Supreme Court has explained that, "[i]n cases involving the custody and support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn.1989). Although "[t]here is no absolute right to such fees, . . . their award in custody and support proceedings is familiar and almost commonplace." *Id.* at 170. It is important to note that the purpose of attorney's fees in these matters "is to protect the children's, not the custodial parent's, legal remedies." *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

We note that the trial court primarily based its award of attorney fees to Mother on her efforts to enforce Father's child support obligation. Because we have reversed the trial court's judgment regarding Father's ongoing child support obligation, we vacate the judgment of the trial court awarding Mother $35,000.00 in attorney fees during trial. However, we note that the trial court previously awarded Mother $8,975.00 in the trial court for attorney fees:

> First Petition for *Scire Facias*: $750.00
> Second Petition for *Scire Facias*: $2,500.00
> Third Petition for *Scire Facias*: $4,725.00
> Petition to Modify before the Divorce Referee: $1,000.00

The record shows that Father has paid $1,300.00 towards the above judgments. Accordingly, we affirm the judgment of the trial court requiring Father to pay $7,675.00 to Mother for her attorney fees in representing the interests of the minor children. The remaining judgment of $27,325.00 is vacated and remanded to the trial court for reconsideration in light of our holding regarding Father's ongoing child support obligation.

## D. Marital Property

Father next argues that the trial court erred in classifying certain personal property as marital for purposes of property division. The division of marital property, including its classification and valuation are findings of fact. *Woodward v. Woodward,* 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Trial courts have "wide latitude in fashioning an equitable division of marital property." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). Accordingly, the trial court's decisions regarding classification, valuation and division of property are reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. *Farrar v. Farrar*, 553 S.W.2d 741, 743 (Tenn. 1977).

At trial, Father introduced an exhibit detailing certain items of personal property that he asserted where neither marital property, nor his separate property, but were owned by Father's parents. Father's father also testified that these items were merely on loan to the parties and that they should be returned to him and his wife. On the other hand, Mother testified that these items were gifts to the parties and that there was never an indication that these items were to be returned to Father's parents. The evidence on this issue rests on the testimony of the parties, as well as their relative credibility. In this case, the trial court noted that "I must say in this case that the Court has not been impressed with [Father's] credibility." The trial court made no such adverse credibility finding against Mother. When "the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington,* No. M2009-00434-COA-R3-CV, 2010 WL 623629, at *2 (Tenn. Ct. App. Feb. 19, 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn.2002)). Considering the evidence as whole, we cannot conclude that the trial court erred in crediting Mother's testimony regarding the furnishings. Furthermore, the items at issue were all awarded to Father in the final divorce decree. Father takes no issue with the overall division of marital property, nor does he argue that he should have been awarded a larger portion of the marital property due to the trial's court's alleged error in classifying this property as marital. Accordingly, we find no error in the trial court's determination that the furnishings were marital property subject to division.

## E. Attorney Fees on Appeal

In Mother's statement of the issues, she asks that Father be ordered to pay her attorney fees incurred in defense of this appeal. However, Mother does not refer to this argument in the argument section of her brief, nor does she cite any authority for the proposition that she is entitled to her fees in defense of this appeal. This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean*, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue."). Accordingly, this issue is waived.

## VI. Conclusion

The judgment of the Circuit Court of Shelby County is reversed in part, vacated in part, affirmed in part, and remanded for further proceedings in accordance with this opinion. Costs of this appeal are taxed one-half to Appellant, Jeffery Wayne Goodman, and his surety, and one-half to Appellee Teresa Ann Barrett Goodman, for all of which execution may issue, if necessary.

_____
J. STEVEN STAFFORD, JUDGE